**COMMONWEALTH of Pennsylvania**

v.

**Roman ELLIS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 12, 1997.
Filed July 30, 1997.

Erika P. Kreisman, Pittsburgh, for appellant.

Kemal A. Mericli, Robert A. Willig, Assistant District Attorneys, Pittsburgh, for Commonwealth, Appellee.

Before CIRILLO, President Judge Emeritus, and JOHNSON and FORD ELLIOTT, JJ.

CIRILLO, President Judge Emeritus.

Roman Ellis appeals from the judgment of sentence of the Court of Common Pleas of Allegheny County. We affirm.

During the early morning hours of May 1, 1994, four men were peacefully sleeping in a house located in the Stanton Heights section of Pittsburgh, Pennsylvania. Three of the men, Thomas Balistrieri, David Muto, and Thomas Urban, rented the home. The fourth man, Richard Wonderley, was one of Mr. Muto's friends. At approximately 3:00 a.m. the men were jolted awake by the sound of screaming and yelling. Four African–American males (one of whom was later determined to be Ellis) burst into the residence demanding money and narcotics. Mr. Balistrieri was first to come in contact with the intruders. One intruder viciously threw him to the floor and then bludgeoned him in the face with the handle of a handgun, causing his eye to bleed profusely. The intruder then reached in Balistrieri's pocket and retrieved fifty dollars and his car keys. Mr. Balistrieri pleaded with his assailant that he was unable to breathe. The assailant responded by inserting the barrel of his gun into Balistrieri's mouth.

While one intruder was assaulting Balistrieri, another struck Mr. Wonderley in the head with a gun and ripped a gold ring off his finger. Yet another intruder smashed Mr. Muto in the side of the head, shoved him to the ground, and fished two hundred dollars from his pocket. One of the intruders barked to the others, "I know him (referring to Muto). Cover him up." Muto was then blindfolded with a pair of shorts and his arms were tied behind his back. Muto was carried down to the basement. The intruders quickly restrained Wonderley and Balistrieri and threw them downstairs on top of Muto like a pile of dirty laundry.

As the other intruders were busy placing the residents in the basement, Ellis combed the upstairs area for narcotics. While a couple of the intruders were carrying Urban to the basement, Urban was able to momentarily break free of his captors' grasp and dash for the steps. One of the intruders yelled, "Get him," to which the other intruders responded with a hail of gunfire in Urban's direction. Multiple shots were fired striking Urban ten times, mortally wounding him. Ellis, meanwhile, descended the steps into the spray of bullets and was himself wounded. As the gunfire ceased, one of the assailants said, "Let's go Tiger," after which the intruders immediately fled. Two of the intruders drove away in Balistrieri's car, while the others fled on foot. Balistrieri immediately untied himself and the others and ran to a neighbor's house to call for assistance.

Upon questioning by the police, Muto explained that he knew "Tiger," one of the intruders. He told police Tiger's real name was Leonard Smith. Based upon this information, Pittsburgh police detectives interviewed Smith who told police that he, along with three others including Ellis, committed the crimes that occurred in the Stanton Heights house while looking for money and drugs Detective Robert McCabe was subsequently informed that Ellis was presently being treated for a gunshot wound at Presbyterian Hospital. Detective McCabe proceeded to the hospital to speak with Ellis. After recuperating, Ellis was arrested and placed on trial for his role in the crimes. The jury found Ellis guilty of second-degree murder, burglary, robbery, aggravated assault, unlawful restraint, criminal conspiracy, and unlawful possession of a firearm. Ellis was then sentenced to life imprisonment

without parole on the second-degree murder charge and a consecutive sentence of five to ten years imprisonment for aggravated assault. No further penalties were imposed on the remaining charges. Post-sentence motions were filed and denied. This appeal followed. Ellis presents the following questions for our consideration:

1. Did the court err in refusing to suppress appellant's statement to police on the ground that he was not in custody?

2. Did the court err in not [sic] holding an evidentiary hearing with regard to defense counsel Rothman's sabotaging of Ellis's case by providing information to the Commonwealth?

3. Did the court err in refusing to admit into evidence letters from the defecting witness to appellant that would have revealed her motive to lie?

4. Did the court err in permitting a medical doctor to testify that pain medication did not affect the ability to tell the truth?

5. Did the court err in refusing to admit evidence of promises to a Commonwealth witness?

6. Did the court err in elaborating on the 8.306 co-conspirator charge?

7. Did the court err in the sentencing of appellant with regard to the prior record score, deadly weapons enhancement and reasons for the aggravated range?

8. Was trial counsel ineffective in not preparing her client to testify in the suppression hearing; in not adequately interviewing important witness Edge; in not having Edge's love letters read to the jury and in not offering them into evidence; in failing to object when detective McCabe implicated appellant with hearsay; in not objecting to references to gangs; in not objecting to references to gangs; in not objecting to the reference to protective custody; in withdrawing the alibi charge; and in jury selection?

Ellis first claims that the suppression court erred in finding that he was not in custody at the time he made a statement to police. Our standard of review of an order denying a motion to suppress evidence is limited to determining whether the findings

of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Crompton*, 545 Pa. 586, 682 A.2d 286 (1996); *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539 (1991). In making this determination, this court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. *Id.* If the evidence supports the findings of the trial court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.*

Ellis contends that the suppression court erred in refusing to suppress his statements to Detective McCabe at the hospital because he was subjected to custodial interrogation and did not knowingly, voluntarily, and intelligently waive his *Miranda* rights. Specifically, Ellis claims that the interrogation conducted by Detective McCabe was custodial, because Ellis felt he was not free to leave the hospital. Moreover, Ellis asserts that due to the lingering effects of the anesthesia administered before surgery and subsequent administration of pain medication his mind was clouded at the time of Detective McCabe's interrogation, and, therefore, he was unable to voluntarily waive his *Miranda* rights.

The Fifth Amendment right to counsel and the concomitant rights guaranteed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are only triggered when an individual is undergoing actual "custodial interrogation." *Commonwealth v. Reed*, 400 Pa.Super. 207, 215, 583 A.2d 459, 462 (1990). "Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied his freedom of action in any significant way or is placed in a situation which he reasonably believes that his freedom of action or movement is restricted by this interrogation." *Commonwealth v. Williams*, 539 Pa. 61, 74, 650 A.2d 420, 427 (1994) (citations omitted). The subjective intent of the interrogating officer is not relevant to a determination of whether an interrogation was custodial. Rather, the paramount focus is on whether the individual being interrogated reasonably

believes that his freedom of action is being restricted. *Id.*

Before an individual may be subjected to custodial interrogation, he or she must make a knowing and intelligent waiver of his or her privilege against self-incrimination and right to counsel after adequate warning as to those rights. *Commonwealth v. Williams,* 539 Pa. 61, 650 A.2d 420 (1994); *Commonwealth v. Chacko,* 500 Pa. 571, 459 A.2d 311 (1983). The test for determining whether a waiver is knowing and voluntary is multi-faceted. In order to determine the voluntariness of a waiver, we must ascertain whether the waiver was the result of an intentional choice that was not subjected to undue governmental pressure. *Commonwealth v. Cephas,* 361 Pa.Super. 160, 522 A.2d 63 (1987). To determine whether the waiver was knowing and intelligent, we focus upon the defendant's cognitive processes, i.e., whether the defendant was aware of the nature of the choice that he made in relinquishing his *Miranda* rights. *Id.*

In the present case, the suppression court concluded that Ellis was not in custody at the time of his interrogation, and, thus, was not entitled to assert his *Miranda* rights. In drawing this conclusion, the court found credible the testimony of Detective McCabe. Detective McCabe testified that he requested and received permission from the hospital staff prior to talking with Ellis. Detective McCabe also stated that Ellis agreed to answer some questions, but did not want to talk in Ellis' room. With the assistance of a nurse, the two proceeded to a lounge at the end of the hall. The detective further stated that he did not promise or threaten Ellis in any manner, nor did he physically restrain him or order that Ellis be physically restrained at any time prior to questioning Ellis. In fact, Detective McCabe testified that had Ellis refused to talk with him, he "would have let him go and would try to build the case a little more solid." The trial court chose not to credit Ellis' testimony that he felt that he was not free to leave the hospital, because an unnamed doctor had told him that if he attempted to leave the hospital he would have been arrested and that he could not leave his room without notifying hospital security. *See Commonwealth v. Moore,* 436 Pa.Super. 495, 501, 648 A.2d 331, 333 (1994) (citations omitted) ("It is within the province of the fact finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence."). Based upon the facts presented during the suppression hearing, we cannot conclude that the court erred in finding that Ellis was not in custody. *Crompton, supra. See Commonwealth v. Smith,* 382 Pa.Super. 288, 555 A.2d 185 (1989) (even though defendant was the subject of police investigation, he was not in custody for *Miranda* purposes when officer interviewed him at the hospital; officer did not restrain defendant in any way); *Commonwealth v. Fento,* 363 Pa.Super. 488, 526 A.2d 784 (1987) (same).

Even if we were to conclude that Ellis was in custody, and, therefore, entitled to receive *Miranda* warnings, we find that Ellis did receive such warnings and knowingly, intelligently, and voluntarily waived his rights. *See Williams, supra; Chacko, supra; Cephas, supra.* Prior to any interrogation, Detective McCabe read Ellis his *Miranda* rights. Ellis responded that he understood his rights and wished to waive them. In addition, Detective McCabe gave Ellis a form detailing the fact that he was advised of his rights and agreed to waive them. Ellis was not forced in any way into waiving his rights. Moreover, although Ellis was medicated and had undergone surgery earlier in the day, there is absolutely no evidence that his cognitive functions were impaired.[1] Ellis' statements, therefore, were properly admitted. *Williams, supra; Chacko, supra; Cephas, supra.*

1. Contrary to Ellis' contention, expert medical testimony is not required to assess the cognitive function of a defendant at the time of waiver. *See Commonwealth v. Wanner,* 413 Pa.Super. 442, 605 A.2d 805 (1992) ("while expert medical testimony would be helpful to ... determine the accused's physical and mental imparities (sic),

... credible testimony of interrogating officers alone can substantiate a finding of voluntariness"). Here, Detective McCabe testified that the nurse gave him permission to speak with Ellis and that Ellis did not appear to be under the influence of any medication.

Ellis next asserts that the trial court erred by failing to hold an evidentiary hearing regarding Joyce Edge's withdrawal of her original statement outlining the early morning events of May 1, 1994. It is well settled that a new trial based upon after discovered evidence will only be granted if the evidence: (1) has been discovered after the trial and could not have been obtained prior to the conclusion of the trial by the exercise of due diligence; (2) is not merely cumulative or corroborative; (3) will not be used solely to impeach the credibility of a witness; and (4) is of such a nature and character that a different verdict will likely result if a new trial is granted. *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986). Trial counsel became aware of Joyce Edge's change in her statement to the police a few days before trial began. The trial court properly denied the request because the new evidence came to light before the conclusion of the trial. Furthermore, trial counsel had an opportunity to cross-examine Joyce Edge on the stand as to why she changed her story. *Buehl, supra.* In reviewing the record, we agree with the trial court and find that Ellis is not entitled to a new trial.

Ellis' next challenge, that the trial court erred in refusing to admit letters written by prosecution witness Joyce Edge, is quite simply a blatant mischaracterization of the record. Contrary to Ellis' assertion, the letters were explicitly admitted as evidence. Although the letters were admitted, the trial court refused to permit the jury to have the letters in their possession while deliberating. Ellis contention, therefore, is more properly characterized as whether the trial court erred in refusing to permit the jury to possess the letters during deliberations.

Pennsylvania Rule of Criminal Procedure 1114(1) explains in pertinent part, "Upon retiring, the jury may take with it such exhibits as the trial judge deems proper ..." Pa. R.Crim.P. 1114. Our courts have interpreted this rule to mean that the decision to permit or refuse access to trial exhibits is within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Commonwealth v. Bango*, 454 Pa.Super. 339, 685 A.2d 564 (1996); *Commonwealth v. Fox*, 422 Pa.Super. 224, 619 A.2d 327 (1993). Here, the letters were extensively used on cross-examination of Ms. Joyce. The jury was well aware of the contents of the letters and their relevance, i.e., to demonstrate that Joyce had a motive to lie. We conclude, therefore, that the trial court did not abuse its discretion. *See Commonwealth v. Thomas*, 372 Pa.Super. 349, 539 A.2d 829 (1988) (trial court did not abuse its discretion in refusing to permit the jury to possess during deliberation a prosecution witness' notes that defense counsel extensively used on cross-examination of the witness).

Ellis' next two issues relate to the admissibility of evidence at trial. The Supreme Court of this Commonwealth has held that "the admission of evidence is a matter vested in the sound discretion of the trial court, and an appellate court may reverse only on a showing that the trial court abused its discretion." *Commonwealth v. Seiders*, 531 Pa. 592, 596, 614 A.2d 689, 691 (1992). *Accord Commonwealth v. Cook*, 544 Pa. 361, 676 A.2d 639 (1996); *Commonwealth v. Claypool*, 508 Pa. 198, 495 A.2d 176 (1985); *Commonwealth v. Patosky*, 440 Pa.Super. 535, 656 A.2d 499 (1995). In order to be admissible, evidence must be relevant; evidence is relevant if it logically tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference or presumption regarding a material fact. *Commonwealth v. Urrutia*, 439 Pa.Super. 227, 235, 653 A.2d 706, 710 (1995). Relevant evidence is usually probative, however, to be admissible, its probative value must outweigh its prejudicial effect. *Id.*

Ellis first asserts that the trial court erred in permitting Dr. Gary Gruen (Ellis' treating physician for the gun shot wound) to testify that pain medication which Ellis was taking when he was interrogated by Detective McCabe did not affect his cognitive functions. Expert opinion testimony is appropriate only where the subject matter is beyond the knowledge, information, or skill possessed by the ordinary juror. *Commonwealth v. Montavo*, 439 Pa.Super. 216, 653 A.2d 700 (1995). Here, Dr. Gruen's testimo-

ny was admitted to explain the effects of morphine on a person's cognitive functions. Clearly, such testimony is beyond the knowledge, information, or skill possessed by an ordinary juror. *Montavo, supra.* Moreover, such evidence was clearly relevant in light of the defense's attempt at trial to prove that Ellis' confession to Detective McCabe was untrustworthy as a result of the effects of the morphine. *Urrutia, supra.* We conclude, therefore, that the trial court did not abuse its discretion in admitting Dr. Gruen's testimony. *Seiders, supra; Cook, supra.*

■■■ Ellis next argues that the trial court erred when it refused to permit him to examine Robert Easley, a Commonwealth witness, concerning certain promises that the Commonwealth may have made to Easley in exchange for his testimony. Ellis correctly notes in his brief that evidence of bias, interest, or corruption is always relevant impeachment evidence. *See Commonwealth v. Nolen,* 535 Pa. 77, 634 A.2d 192 (1993); *Commonwealth v. Mullins,* 445 Pa.Super. 583, 665 A.2d 1275 (1995); *Commonwealth v. Culmer,* 413 Pa.Super. 203, 604 A.2d 1090 (1992). A careful review of the record reveals, however, that Ellis' argument once again distorts the trial court's ruling. Ellis complains about the following exchange:

TRIAL COUNSEL:

Had you come to this courtroom in particular to testify on similar matters in the past?

EASLEY:

Yes.

TRIAL COUNSEL:

Did you come to court back in November to testify?

EASLEY:

Yes.

TRIAL COUNSEL:

Prior to your testifying were you incarcerated?

EASLEY:

Yes.

TRIAL COUNSEL

Were you promised anything for your testimony?

EASLEY:

Yes.

TRIAL COUNSEL:

Would you tell the jury what that was?

DISTRICT ATTORNEY:

I am going to object unless she would specify which testimony she is talking about?

THE COURT:

Sustained.

The trial court did not refuse to permit Ellis' trial counsel from inquiring into possible bias. Rather, the trial court's ruling merely served to prohibit trial counsel from confusing the jury. Because Easley had been promised favorable treatment in exchange for testimony in the related trial of Leonard Smith, one of Ellis' co-conspirators, the Commonwealth requested that defense counsel identify the testimony about which counsel was inquiring. The fact that trial counsel chose not to elaborate further is indicative of trial counsel's attempt to confuse the jury. Under these circumstances we cannot find that the trial court committed any error.

■■ Ellis next complains that the trial court erred in supplementing the standard jury charge with regard to accomplice liability. Ellis, however, has not presented any reason as to how the court erred or how he has been prejudiced. Ellis has failed to develop any argument or cite any authority in support of his vague contention. We, therefore, *deem this issue waived. See* Pa.R.A.P. 2119(a). *See also Commonwealth v. LaCava,* 542 Pa. 160, 666 A.2d 221 (1995) (courts will not make appellant's arguments for him); *Commonwealth v. Zewe,* 444 Pa.Super. 17, 663 A.2d 195 (1995) (failure to develop legal argument results in waiver of claim).

■■■ Ellis next claims the court erred in sentencing him to five to ten years imprisonment on the aggravated assault charge. Ellis' claim implicates a discretionary aspect of sentencing.[2] *See Commonwealth v.*

**2.** We note that because Ellis is challenging a discretionary aspect of sentencing, he is required to include in his brief a separate concise statement demonstrating that there exists a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Common-*

*Smicklo*, 375 Pa.Super. 448, 544 A.2d 1005 (1988) (*en banc*) (challenge to imposed sentence that does not exceed statutory limit and does not concern application of mandatory minimum penalty is a challenge to the discretionary aspects of the sentence). Challenges to discretionary aspects of sentencing must raise a substantial question. *Commonwealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987).

▪ Whether a claim constitutes a substantial question must be evaluated on a case by case basis. *Commonwealth v. Losch*, 369 Pa.Super. 192, 201 n. 7, 535 A.2d 115, 119 n. 7 (1987). "However, we will be inclined to allow an appeal where an appellant advances a colorable argument that the trial judge's actions were: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* A claim that the trial court erroneously applied the Sentencing Guidelines presents a substantial question. 42 Pa.C.S.A. § 9781(c)(1);[3] *Commonwealth v. Scullin*, 414 Pa.Super. 442, 447, 607 A.2d 750, 752 (1992). Ellis argues that the sentencing court should have applied the Prior Record Score (hereinafter PRS) of three (3) to the second-degree murder rather than the aggravated assault conviction, and that the court erroneously included the deadly weapons enhancement. We disagree.

▪ The PRS and the Offense Gravity Score are part of the Guidelines used by the court to create uniformity in sentencing. *Commonwealth v. Bolden*, 367 Pa.Super. 333, 532 A.2d 1172 (1987). The guidelines list ranges within which a court may sentence for particular crimes; they are not mandatory and courts will take into account various other factors when sentencing. *Commonwealth v. Martin*, 416 Pa.Super. 507, 611 A.2d 731 (1992). The PRS is an aggravating factor which increases a particular crime's

suggested sentence in the guidelines. *Commonwealth v. Billett*, 370 Pa.Super. 125, 535 A.2d 1182 (1988).

Murder in the second degree carries a statutorily mandated life sentence. 18 Pa. C.S.A. § 1102(b). This crime does not allow a range within which a court may use its discretion to increase or reduce a defendant's sentence. It would be futile, then, to apply the PRS, an aggravating factor, to a mandatory life sentence which cannot be increased. Ellis was sentenced for only two of the seven crimes of which he was convicted, murder in the second degree and aggravated assault. Since the PRS cannot enhance Ellis' mandatory life sentence for murder, it was proper for the court to apply his PRS to the aggravated assault conviction, which sentence can be increased in severity.

▪ Moreover, we stress that sentencing is within the sound discretion of the trial court and will not be disturbed unless it is outside the statutory limits or manifestly excessive. *Commonwealth v. Gee*, 394 Pa.Super. 277, 575 A.2d 628 (1990). Where a presentence report exists, the appellate court will presume the sentencing court was aware of any and all relevant information contained in the report and weighed those considerations along with all mitigating factors. *Commonwealth v. Devers*, 519 Pa. 88, 546 A.2d 12 (1988). In considering whether a sentence was manifestly excessive the appellate court must give great weight to the sentencing judge's discretion, as he or she is in the best position to measure various factors such as the nature of the crime the defendant's character, and the defendant's display of remorse, defiance or indifference. *Commonwealth v. Anderson*, 381 Pa.Super. 1, 552 A.2d 1064 (1988).

▪ Here, Ellis was convicted of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1), which is graded as a felony in

---

*wealth v. Tuladziecki*, 513 Pa. 508, 522 A.2d 17 (1987); *see* Pa.R.A.P. 2119(f). Although Ellis has failed to include a 2119(f) statement, the Commonwealth has not objected. Accordingly, we will determine whether a substantial question exists. *See Commonwealth v. Krum*, 367 Pa.Super. 511, 533 A.2d 134 (1987) *(en banc)*.

**3.** Section 9781 states in pertinent part:

(c) **Determination on appeal.** The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds: (1) the sentencing court purported to sentence within the sentencing guidelines but applied the guidelines erroneously.

the first degree. A person convicted of aggravated assault may be sentenced to imprisonment for not more than 20 years. 18 Pa.C.S.A. § 1103. Ellis' sentence of 60 to 120 months does not exceed the statutory maximum. In addition, the court held a pre-sentence hearing and stated its reasons for imposing a sentence above the Guidelines' recommended minimum, such as Ellis' lack of remorse and criminal history. *See Commonwealth v. Wright,* 411 Pa.Super. 111, 600 A.2d 1289; *Anderson, supra.* We find, therefore, that the court acted within its discretion in sentencing defendant. *Gee, supra; Anderson, supra.*

 Ellis also argues that the Commonwealth did not prove that he possessed a deadly weapon as defined in 42 Pa.C.S.A. § 2154(b) therefore, the court erred in applying the deadly weapon enhancement to defendant's sentence. The standard of proof governing the applicability of deadly weapon enhancement is a preponderance of the evidence. *Commonwealth v. McKeithan,* 350 Pa.Super. 160, 504 A.2d 294 (1986). Circumstantial evidence may prove the possession of a deadly weapon. *Id.* (finding that although weapon employed by defendant in committing aggravated assault was not found or seen, it will not prevent application of deadly weapon enhancement to sentence). Where there is clear testimony that defendant possessed a gun at the initiation of the crime it is irrelevant that he did not possess the gun throughout the duration of the criminal activity. *See Commonwealth v. Bowen,* 417 Pa.Super. 340, 612 A.2d 512 (1992).

At trial, one victim testified that all the assailants had a gun. Another testified that he believed all of them possessed a gun. Furthermore, Detective McCabe, who interviewed Ellis shortly after the crime occurred, testified that Ellis admitted obtaining his gun before proceeding to the scene of the crime. Ellis also told the detective that once inside the house, he gave his gun to Leonard Smith at Smith's request. We conclude, therefore, that the Commonwealth did prove that Ellis possessed the gun. The court correctly ap-

plied the deadly weapon enhancement to defendant's sentence.[4] *McKeithan, supra; Bowen, supra.*

Ellis' last argument contains eight claims of trial counsel ineffectiveness: (1) in not preparing her client to testify in the suppression hearing; (2) in not adequately interviewing important witness Edge; (3) in not having Edge's love letters read to the jury and in not offering them into evidence; (4) in failing to object when Detective McCabe implicated appellant with hearsay; (5) in not objecting to references to gangs; (6) in not objecting to the reference to protective custody; (7) in withdrawing the alibi charge; and (8) in jury selection. We conclude that none of these assertions adequately demonstrate ineffectiveness of trial counsel.

 Our standard of review when evaluating a claim of ineffective assistance of counsel is well settled. We presume that trial counsel is effective and place on the defendant the burden of proving otherwise. *Commonwealth v. Williams,* 524 Pa. 218, 230, 570 A.2d 75, 81 (1990). We are first required to determine whether the issue underlying the claim is of arguable merit. *Commonwealth v. Johnson,* 527 Pa. 118, 122, 588 A.2d 1303, 1305 (1991). If the claim is without merit, our inquiry ends because counsel will not be deemed ineffective for failing to pursue an issue which is without basis. *Id.* Even if the underlying claim has merit, the appellant still must establish that the course of action chosen by his counsel had no reasonable basis designed to effectuate the client's interests and, finally, that the ineffectiveness prejudiced his right to a fair trial. *Id.; Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). The same showing of prejudice must be made by an appellant whether on direct appeal from a judgment of sentence or on appeal from denial of PCRA relief. *Commonwealth v. Kimball,* 453 Pa.Super. 193, 683 A.2d 666 (1996) *(en banc).*

 Ellis first contends that trial counsel was ineffective for failing to prepare Ellis to testify at the suppression hearing. Ellis

4. Ellis also contends that his sentence violated Double Jeopardy. However, he has neither sufficiently developed an argument, nor has he cited any law or authority to support his claim. Ellis, therefore, has waived this claim. *LaCava, supra; Zewe, supra.*

claims that if trial counsel had thoroughly interviewed him prior to the suppression hearing, she would have known to elicit from Ellis that a doctor in the hospital had told him that he may as well have the surgery because once he left the hospital he would be arrested. Due to this statement, Ellis contends that he would have been able to show that he was consciously aware that he was not free to leave when Detective McCabe questioned him.

■■■ The length of time dedicated to client consultation affords no basis for inferring the extent of trial preparation. *See Commonwealth v. Fields*, 491 Pa. 609, 421 A.2d 1051 (1980) (stating that trial counsel was not ineffective for meeting with client only once where record showed that counsel reviewed taped interview with client at length and thoroughly examined investigators' reports); *Commonwealth v. Poindexter*, 435 Pa.Super. 509, 646 A.2d 1211 (1994). Ellis has not provided any evidence to support his allegation of inadequate preparation. Here, counsel did meet with defendant. Trial counsel will not be deemed ineffective for lack of preparation without sufficient proof. *Johnson, supra.*

■■■ Ellis next argues that trial counsel was ineffective for not adequately interviewing Joyce Edge. Appellant suggests that, because trial counsel did not have a good rapport with Joyce Edge, trial counsel compelled Joyce Edge to change her story to support the prosecution's case. Trial counsel cannot be faulted merely because a witness chose to retract her original account, found in the initial police report, and offer testimony against the defendant. Furthermore, Ellis offers no causal connection between the acts of trial counsel and Joyce Edge's decision to change her statement. The record reflects that trial counsel was quite effective in questioning Joyce Edge about the change in her testimony and about the letters she wrote to Ellis wherein she claimed to love him, but in court stated that she was lying in those letters. As counsel fails to present a sufficient argument, we cannot find trial counsel ineffective. *Johnson, supra.*

Ellis' third ineffectiveness claim is that trial counsel was ineffective for failing to have Joyce Edge's love letters read to the jury and in not offering them into evidence. This argument is merely a reformulation of defendant's third issue, which we have already found meritless. Trial counsel cannot be found ineffective for not pursuing a meritless claim. *Johnson, supra.*

■■■ Ellis next claims that trial counsel was ineffective for failing to object to Detective McCabe's testimony of Leonard "Tiger" Smith's statements. When an out-of-court statement is offered to prove the truth of the matter, it is hearsay. *Commonwealth v. Collazo*, 440 Pa.Super. 13, 654 A.2d 1174 (1995). An exception to the hearsay rule is an out-of-court statement offered to explain a course of conduct. *Id.* Detective McCabe's testimony was offered to explain why he went to the hospital to speak with Ellis; it was not offered to prove that Ellis was at the crime scene. This falls within the course of conduct exception to hearsay. *See Commonwealth v. Culmer*, 413 Pa.Super. 203, 604 A.2d 1090 (1992) (stating that officer who received defendant's name and address from unidentified man falls within course of conduct exception to hearsay). As these comments fall within the hearsay exception, Ellis' claim lacks merit. Trial counsel, therefore, was not ineffective for failing to object. *Johnson, supra.*

■■■ In his fifth argument, Ellis claims that trial counsel was ineffective for not objecting to gang references because it prejudiced Ellis by making him "look like a dangerous punk." Ellis' first assertion of prejudice is the prosecution's questioning of the officer who responded to the drive-by shooting call. The officer testified that Ellis identified his shooter. However, the officer did not know whether the shooter was a member of a gang in the area. Ellis also cites as prejudicial error an officer's testimony that he works for the "Gang Suppression Unit." We fail to see how an officer's testimony of defendant's statement of who the shooter was and how another officer's unit having the word "gang" in it can be prejudicial and imply that defendant is "a dangerous punk." *Cf. Commonwealth v. Scarfo*, 416 Pa.Super. 329, 611 A.2d 242 (1992) (refer-

ences to codefendants as "made" members of Mafia and prosecutor's references to defendants as "wolves," "pack of wolves," and "the pack" constituted reversible error). If anything, such testimony lends support to Ellis' argument that he was shot in a drive-by shooting, which is associated with gang populated areas wherein many innocent bystanders have been hit from the spray of bullets. Trial counsel will not be found to have been ineffective for failing to object to nonprejudicial statements. *Johnson, supra.*[5]

Ellis next argues that trial counsel was ineffective for neglecting to object to the protective custody status of Joyce Edge. Trial counsel, in fact, did object to the prosecution's questions to Joyce Edge concerning her protective custody status. The trial judge overruled her objection. Ellis has misrepresented the record. We find no ineffectiveness. *Johnson, supra.*

In his seventh contention, Ellis alleges that trial counsel was ineffective for withdrawing the request for an alibi charge. A defendant is entitled to an alibi instruction, even if not wholly believed, where it raises a reasonable doubt to his presence at the crime scene and when it precludes the possibility of the defendant's presence at the crime scene. *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980). An alibi defense is usually accompanied by alibi witnesses or other evidence placing the defendant at another place at the time of the crime. The defendant's testimony, however, may alone be sufficient to raise an alibi defense. *Id.* Presently, trial counsel filed a timely notice of an alibi defense. At the end of trial, counsel stated that after discussing the alibi defense with Ellis, Ellis agreed to withdraw the alibi defense because the defense witnesses did not qualify as alibi witnesses and the defense chose not to "pursu[e] that avenue." The decision was a strategic one made with Ellis' consent. We will not interfere with a defense strategy. *See Commonwealth v. Cheatham*, 419 Pa.Super. 603, 615 A.2d 802 (1992) (stating that court will not counter

counsel's strategic decisions so long as strategy has a reasonable basis). Trial counsel was not ineffective for withdrawing the alibi defense. *Johnson, supra.*

Ellis' last series of claims question trial counsel ineffectiveness in jury selection. The first claim centers around trial counsel's failure to eliminate a selected juror who heard an allegedly prejudicial question:

PROSECUTOR:

Now, one thing he'll tell you that as a general rule, a person may be held responsible for the acts of another person or a conspirator of that other person. Here is my question: If after you have heard all the evidence, okay, you conclude along with the other jurors beyond a reasonable doubt that the killing occurred, that another person committed it, and that this Defendant was an accomplice or a conspirator of that other person, would you be able to follow the law and hold him responsible just as if he had pulled the trigger?

POTENTIAL JUROR:

If that's the law, yes.

PROSECUTOR:

My question assumes that that is the law and that the facts have been decided as I stated. So, you would be able to follow the law?

POTENTIAL JUROR:

Yes.

Trial counsel objected to this question due to the specificity of it. The trial court sustained the objection because a general question addressing a person's accountability for another's actions was sufficient for jury selection.

The potential juror repeatedly stated that he would be able to follow the judge's instructions, make his decision based solely upon the evidence presented at trial, presume Ellis is innocent until otherwise proven beyond a reasonable doubt, and recognize Ellis' right to remain silent. Ellis presents no proof that the particular juror was unfair, partial, or unable to follow the law, therefore,

---

**5.** Ellis further claims that during jury selection an excused juror's attitude about gangs specifically shows that the prosecution prejudicially elicited these gang references to make "Ellis look like a dangerous punk." Ellis has provided no support for this argument. We, therefore, cannot address it. *LaCava, supra; Zewe, supra.*

trial counsel can not be found ineffective. *See Commonwealth v. Cox*, 546 Pa. 515, 686 A.2d 1279 (1996) (stating that where two jurors assured court they would follow court's instruction and apply law in deciding first-degree murder case and in assessing proper penalty, trial counsel was not ineffective for failing to ask jurors whether they could consider life imprisonment).

Ellis also contends that trial counsel was ineffective in allowing a particular juror to be selected. This juror responded to the following question in the affirmative:

TRIAL COUNSEL:

> In this case, in particular, as you can see Mr. Ellis is a young black male and the victims are young white men. Would that in any way [a]ffect your ability to listen to the evidence and make a fair assessment based upon just what is presented to you?

We will not address this issue because Ellis fails to argue how the juror would be affected. *LaCava, supra; Zewe, supra.*

■ The next claim underlying Ellis' allegation of trial counsel ineffectiveness is that trial counsel seated a juror who expressed that she wanted to hear both sides of the story. Ellis claims that this is prejudicial because trial counsel knew or was fairly certain that Ellis would not testify on his own behalf. In reviewing the record, it appears that this juror was confused about criminal procedure and a defendant's constitutional right to silence. After some explanation by the trial judge and both lawyers, the potential juror understood that she, as a juror, might not hear both sides of the story. The potential juror then stated repeatedly that she would be able to follow the judge's instructions and put her personal beliefs of hearing both sides to a story aside. She further asserted that she would not hold it against Ellis if he chose not to take the stand. Ellis' allegation, therefore, lacks merit. Trial counsel was not ineffective for selecting a juror who stated that she would be able to follow the law. *Johnson, supra.*

6. Ellis contends that the individual claims may not require a new trial, but the cumulative impact of them may have led to an improper verdict. This argument is clearly meritless. *See*

Ellis' final contention is that trial counsel was ineffective for failing to seek an evidentiary hearing to determine how jurors are subpoenaed. This contention is the belief that the subpoena process is discriminatory. Again, Ellis has not provided any support for this argument. This court has previously held that:

> ... remand for an evidentiary hearing is not a discovery tool wherein counsel may conduct investigation and interrogation to search for support for vague or boilerplate allegations of ineffectiveness. Rather, appellant must set forth an offer to prove at an appropriate hearing sufficient facts upon which a reviewing court can conclude that trial counsel may have, in fact, been ineffective, *before* remand for an evidentiary hearing will be granted.

*Commonwealth v. Wells*, 396 Pa.Super. 70, 78–80, 578 A.2d 27, 32 (1990) (emphasis in the original). This issue has been insufficiently argued. We, therefore, will not address it. *LaCava, supra; Zewe, supra; Wells, supra.*[6]

Judgment of sentence affirmed.

*Commonwealth v. Williams*, 532 Pa. 265, 615 A.2d 716 (1992) (no number of failed claims may collectively attain merit if they could not do so individually).