**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**David J. JONES, Appellant.**

Superior Court of Pennsylvania.

Argued June 15, 2000.
Filed Aug. 11, 2000.

William E. Ruane, Media, for appellant.

Patrick L. Meehan, Asst. Dist. Atty., Media, for Com.

Before HUDOCK, STEVENS, JJ., and CIRILLO, President Judge Emeritus.

STEVENS, J.:

¶ 1 This appeal is from the judgment of sentence of the Court of Common Pleas of Delaware County which sentenced Appellant David Jones to eight (8) to sixteen (16) years imprisonment for aggravated assault, simple assault, and possession of an instrument of crime. After a review of both the certified record and the briefs of the parties, we affirm.

¶ 2 The relevant facts and procedural history are as follows: On April 4, 1998, Appellant attacked the victim, Steven Guradano, with a wrench. As a result of the incident, Appellant was arrested and charged with, *inter alia,* Criminal Attempt, Simple Assault, Aggravated Assault, Recklessly Endangering Another Person, Possession of an Instrument of Crime, and Prohibited Offensive Weapons. Prior to trial, Appellant filed a motion to suppress, among other things, his statements made at the scene of the incident because he was not apprised of his *Miranda*[1] warnings, and the motion was denied.

¶ 3 On March 24, 1999, Appellant was tried, non-jury, and was found guilty of aggravated assault, simple assault, and possession of an instrument of crime. On June 8, 1998, Appellant was sentenced as stated above and this timely appeal followed.

¶ 4 The sole question raised by Appellant is whether the suppression court erred in failing to suppress his statements at the scene of the incident. Appellant alleges such statements were the product of custodial interrogation and, thus, no *Miranda* warnings were given by police.

Our standard of review of an order denying a motion to suppress evidence is limited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. *Commonwealth v. Crompton*, 545 Pa. 586, 682 A.2d 286 (1996); *Commonwealth v. Chambers*, 528 Pa. 403, 598 A.2d 539 (1991). In making this determination, this court may only consider the evidence of the Commonwealth's witnesses, and so much of the witnesses for Appellant, as fairly read in the context of the record as a whole, which remains uncontradicted. *Id.* If the evidence supports the findings of the trial.

*Commonwealth v. Ellis*, 700 A.2d 948, 954 (Pa.Super.1997). The Fifth Amendment right to counsel and the concomitant rights guaranteed by *Miranda* are only triggered when an individual is undergoing actual

---

**1.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

custodial interrogation. *Ellis, supra.* "Before an individual may be subjected to custodial interrogation, he must make a knowing and intelligent waiver of his privilege against self-incrimination and right to counsel after adequate warnings as to those rights." *Id.* at 955 (citations omitted). "A person is deemed to be in custody for *Miranda* purposes when '[he] is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.'" *Commonwealth v. Gibson,* 553 Pa. 648, 662, 720 A.2d 473, 480 (1998) (quotation omitted).

In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Commonwealth v. Busch,* 713 A.2d 97, 99 (Pa.Super.1998) (citing *Stansbury v. California,* 511 U.S. 318, 322–323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994) (per curiam) (other citations omitted)). The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views of the law enforcement officer or the person being questioned. "The fact that a[n] Appellant was the focus of the investigation is ... a relevant factor in determining whether he was 'in custody,' but does not require, per se, *Miranda* warnings." *Commonwealth v. Peters,* 434 Pa.Super. 268, 642 A.2d 1126, 1130 (1994).

*Commonwealth v. Smith,* 732 A.2d 1226, 1234 (Pa.Super.1999) (citations omitted).

¶ 5 Herein, the suppression court concluded that Appellant was not in custody and, thus, was not entitled to assert his *Miranda* rights. We agree.

¶ 6 A review of the testimony regarding the incidents leading to Appellant's arrest sheds light on whether Appellant was "free to leave" prior to *Miranda* warnings. At the suppression hearing, Officers Harrigan and Sweeney of the Darby Borough Police Department testified. Harrigan testified that on April 4, 1998 at approximately 11:00 P.M., he was on patrol in Darby Borough and was called to respond to the area of Walnut Street in Colwyn Borough. Harrigan was accompanied by Officers Sweeney and Murrin, upon arriving at the scene they found the victim lying on the sidewalk bleeding from the head. A door was open to a nearby apartment, whereupon Harrigan entered the open door and yelled up the stairs. A "Mr. Shatz" responded to the officer, identified the victim and indicated that a fight had occurred between the victim and Appellant. Shatz further stated that he knew Appellant and where he lived.

¶ 7 Officers Harrigan, Dawson, and Murrin went to the house which Shatz had pointed out as the domicile of Appellant. Appellant's girlfriend Brenda Knox responded to the police officers ringing of the doorbell. Officer Harrigan asked Appellant if he would come outside so they could speak with Appellant, who agreed to do so. The Officers and Appellant walked toward the scene where Shatz identified him as the person who fought with the victim. Officer Sweeney asked Appellant what happened and Appellant told him that the victim called him "a fucking nigger" and swung a Vodka bottle at him. Appellant stated he retaliated by striking the victim with a wrench which was in a duffel bag he was carrying. Officer Sweeney asked Appellant the location of the wrench, and Appellant informed him that the wrench was in the duffel bag at his apartment. Appellant told Sweeney he would retrieve it for him, but Sweeney asked instead for permission to go himself. Appellant granted that permission. After retrieving the wrench, Appellant was placed under arrest.

¶ 8 A review of the record clearly indicates that Appellant was never placed in a position where he was not free to leave. He was never handcuffed or told he had to

accompany the officers to the scene. The sole question asked by police was "what happened?" The police were merely attempting to ascertain whether a crime was committed.

¶ 9 In short, Appellant was placed in a position where he could reasonably feel he was free to leave while making the subject statements and the questions were part of an ongoing investigation by police as to what had happened between the victim and Appellant to precipitate the fight. Therefore, Appellant's claim must fail.

¶ 10 Affirmed.