J-S24027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ADAM J. TIMBARIO | : | |
| | : | |
| Appellant | : | No. 2231 EDA 2018 |

Appeal from the Judgment of Sentence Entered May 4, 2018
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0002720-2017

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED SEPTEMBER 12, 2019**

Adam J. Timbario appeals from the judgment of sentence entered following his jury convictions for accidents involving death or personal injury, duty to give information and render aid, immediate notice of accident to police department, and tampering with or fabricating physical evidence.[1] Timbario challenges the discretionary aspects of his sentence. We affirm the judgment of sentence.

The trial court aptly summarized the facts of the case as follows:

> [Timbario's] convictions arose out of a motor vehicle crash on March 3, 2017 in the area of Route 100 and Shoemaker Road, in the Borough of Pottstown, Montgomery County, Pennsylvania. [Timbario's] vehicle struck and killed, Donald J. Purnell, while he was crossing Route 100. [Timbario] left the scene of the accident.

---

\* Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S.A. §§ 3742(a), 3744(a), 3746(a), and 18 Pa.C.S.A. § 4910(1), respectively.

Approximately 30 minutes after the accident, [Timbario] attempted to sell his pick-up truck to Robert Crowe. Mr. Crowe purchased the truck from [Timbario] not knowing it was involved in a deadly crash. Upon discovering that [Timbario's] truck may have been involved in a deadly crash, Mr. Crowe contacted law enforcement. The Pottstown Police Department and the Montgomery County Detective Bureau conducted a joint investigation into the deadly crash, and, on March 17, 2017, arrested [Timbario].

Trial Court Opinion ("TCO"), filed 10/15/18, at 1.

A jury convicted Timbario of the above crimes. At the sentencing hearing, the trial court heard testimony from Timbario's mother, brother, and the victim's family, and reviewed the Presentence Investigation report (PSI). Timbario also exercised his right of allocution and stated the following:

[Timbario]: I just want to say that I am sorry to the Purnell's. I am sorry for your loss. There's not a day that goes by, that March 3rd, 2017 doesn't resonate in my mind, you know. It's a horrible day that happened and a day that causes me to – like his brother said, where – for a decision that I made going forward, you know, I will make better decisions. And I'm sorry. I'm sorry for your loss.

N.T. Sentencing, 5/4/18, at 22. The trial court did not credit Timbario's claimed remorse and instead concluded "You have shown to me by your conduct, an utter lack of remorse. No remorse, no accepting responsibility, not an iota of decency." *Id.* at 35. The trial court then imposed a sentence of five to 12 years' incarceration.[2] Timbario filed a post-sentence motion arguing

---

[2] The sentence for each offense is as follows: four to 10 years' incarceration for accidents involving death, one to two years' incarceration for tampering with evidence and no further penalty for the remaining charges. *See* TCO at 2.

that the trial court imposed an excessive sentence. The trial court denied the motion and this timely appeal followed.

Timbario raises the following issue:

Did the trial court abuse its discretion in sentencing [Timbario] to a total term of incarceration of not less than five (5) nor more than twelve (12) years on the charges of Accidents Involving Death or Personal Injury and Tampering with Evidence; where the applicable Sentencing Guidelines for said charges set for Standard Ranges of twelve (12) to twenty four (24) months and Restorative Sanctions (RS), respectively, and the charge of Accidents Involving Death (Failure to Stop) called for a mandatory minimum sentence of three (3) years?

Timbario's Br. at 4.

Timbario challenges the discretionary aspects of his sentence. Before we review such a claim, we must first determine whether: 1) the appeal is timely; 2) the issue was preserved; 3) the brief includes a Pa.R.A.P. 2119(f) statement; and 4) there is a substantial question raised. **See Commonwealth v. Foust**, 180 A.3d 416, 438-39 (Pa.Super. 2018). Here, Timbario's appeal is timely and his brief includes a Rule 2119(f) statement. We now address the claims raised in his Rule 2119(f) statement separately.

First, Timbario claims that the trial court failed to consider information in the PSI as well as his rehabilitative factors. **See** Timbario's Br. at 12-13. This claim is waived as he failed to raise this issue in his post-sentence motion. **See** Pa.R.A.P. 302(a) (issues not raised below are waived on appeal).

Next, he claims that his sentence is "manifestly unreasonable, unduly excessive and extremely vindictive," which he preserved in his post-sentence

motion. Timbario's Br. at 13.[3] This claim raises a substantial question, therefore we now address the merits of the claim. ***See Commonwealth v. Cartrette***, 83 A.3d 1030, 1038 (Pa.Super. 2013) (stating claim of manifestly excessive sentence raises a substantial question).

Here, Timbario claims that the imposed sentence is manifestly excessive because the trial court "focused solely upon the serious nature of the injuries inflicted upon the victim and [Timbario's] failure to stop at the scene as justification" for imposing an aggravated sentence. Timbario's Br. at 12. The record belies Timbario's argument.

Prior to imposing its sentence, the trial court made note of all the mitigating evidence presented to it including testimony from Timbario's brother and mother as well as the PSI. However, it concluded that Timbario's actions after hitting the victim as well as his different versions of what happened on the night of the accident were aggravated factors supporting a departure from the Sentencing Guidelines. It elaborated on the multiple opportunities Timbario had to do "the right thing" based on the evidence presented at trial including that he went back to the scene after hitting the victim but then drove away and sold his vehicle approximately thirty minutes after the accident.

_____

[3] The post sentence motion reads in part, "While understanding that the Court found aggravating circumstance(s) existed within the facts of the case, [Timbario] nevertheless believes that the sentence imposed was unduly harsh and excessive." Defendant's Motion to Reconsider/Modify Sentence, filed 5/9/18, at ¶ 25.

When I consider the appropriate sentence, the [c]ourt is required to consider the sentencing guidelines, which I have done, consider the presentence investigation, the memorandums submitted by the Commonwealth, consider the multiple victim impact statements and the testimony that was presented here in court today, and of course, the very able arguments of counsel.

***

I have before me, Mr. Timbario, a man of 31 years who by all accounts, prior to March 3rd, lived a good life; a devoted son, a father, a friend, a hard-working fellow, always working, involved with his church, involved with his community. He certainly comes from a good family; I can see that from his father and his sister today. Seemingly an honorable man, no criminal prior record.

But then the events of March 3rd tell a different story. [Timbario] drove down a bustling roadway in Pottstown and he crashed into a fellow human being, Donald Purnell, and he caused Mr. Purnell's death. That crash left Mr. Purnell on the road, then to be dragged by another car. And Mr. Timbario drove away.

Prior to driving away, there was no crime. So the events of that evening prior to his departure were tragic, but not criminal. But that moment was a crossroads. It was a moment to test character. And it was a test that [Timbario] failed. He could have stopped. He should have stopped. He should have rendered aid. He should have reported his involvement to law enforcement. . . . But instead, he drove into the darkness, left.

. . . . He could have turned around, he could have gone to check on the crash. He could have acknowledged his error. And in fact, the testimony showed that he did turn around. He turned around, made the U-turn, went back up the road and then, again, drove by the scene of the crash.

And there's another test. It's a moment of character. Could have stopped at that point, could have acknowledged the accident, could have acknowledged his involvement, he could have checked on Mr. Purnell, he could have told the police what happened, but then he left again. He drove the other way, leaving Donald Purnell in his rearview mirror, never looking back.

Even after failing to stop, even after going to the scene, even after driving away the second time, he still could have done the right

thing. He could have gone home, he could have called the police, he could have contacted someone to acknowledge his actions and taken responsibility. That was another moment of character, another test. He failed.

Instead of doing what was right and what the law and humanity require, he then took steps to dispose of the vehicle, to hide and conceal his involvement in the crash. Even after that, he still had the opportunity to fix his mistakes. But instead of doing the right thing, he tried to sell the car.

And it was only when someone saw the information on the news about a similar vehicle being involved in a fatal crash and contacted the police, that now the police had the opportunity to find out exactly what happened to Mr. Purnell, after the fact, that they still had that opportunity.

So again, [Timbario] had the opportunity to acknowledge what he had done. It was another test of his character. And he failed, yet again.

Throughout the course of this trial, this [c]ourt heard no less than four different versions of what happened that evening from the mouth of [Timbario], coming from different people.

[Timbario], I know you want us to believe your words. You speak earnestly and you speak softly and you cling to your honor, but the thing is, the truth doesn't have versions. The truth is the truth. And it's hard to believe, it's hard to know exactly what happened because you told so many different stories about this.

Your efforts to craft a story to create the most favorable version of events are nothing more, in this [c]ourt's opinion, a manipulative, deceptive effort of self-protection. You have shown to me by your conduct, an utter lack of remorse. No remorse, no accepting responsibility, no iota of decency.

This [c]ourt is bound to impose punishment not for the crash, because I want to be clear, that is absolutely not the crime, but for the web of lies and deception that were designed to cover up your involvement in the death of an innocent man; a man whose only mistake was where he crossed the street, a man who didn't hurt anyone and who did not deserve the way he died and how you left him.

***

> But I am going to depart from the guidelines today for a number of reasons. I find that [Timbario's] conduct represents the most extreme violation of the statutes for which he is being convicted – has been convicted. I find [Timbario's] conduct reflects repeated efforts to conceal his involvement in the death of another person based upon a car crash. I find [Timbario] has completely failed to accept responsibility for his actions, through his repeated and very deceptions and denials about the events of the evening and I find that a lesser sentence would completely depreciate the seriousness of this crime.

N.T., Sentencing, at 31, 32-36.

We glean no abuse of discretion from this thorough and thoughtful explanation of the trial court as to the sentence it imposed. While it reiterated the horrendous facts of the case and concluded that Timbario was not remorseful, it also acknowledged Timbario's mitigating factors including his family support, that he was involved with the community as well as his church and that prior to the instant case he did not have a criminal record. **See Commonwealth v. Ellis**, 700 A.2d 948, 958 (Pa.Super. 1997) (stating trial court is in the best position to "measure . . . the defendant's display of remorse, defiance or indifference").

The trial court imposed a sentence that was "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of [Timbario]." 42 Pa.C.S.A. § 9721(b).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/12/19