**In the Interest of: D.H.,
a Minor, Appellant.**

Superior Court of Pennsylvania.

Submitted June 7, 2004.
Filed Dec. 1, 2004.

John Ciroli, Jr., Public Defender, Pitts-burgh, for appellant.

Michael W. Streily, Deputy Dist. Atty., Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: TODD, MONTEMURO,* and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 In this appeal from the order adjudicating him delinquent, Appellant, D.H., asks us to determine whether Appellant's incriminating statements to a police officer should be suppressed where the arresting officer elicited the statements through the

* Retired Justice assigned to the Superior Court.

functional equivalent of an interrogation without first advising Appellant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We hold that the situation represented a "custodial interrogation" and Appellant was therefore entitled to the opportunity to assert his *Miranda* rights. Thus, Appellant's statement should have been deemed inadmissible. Accordingly, we vacate the adjudication order and remand for a new delinquency hearing.

¶ 2 The facts and procedural history of this appeal are as follows. On September 20, 2003, at approximately 4:00 p.m., Dana Craven left his firearm out alongside his bed in the bedroom he shared with his wife. The firearm was placed approximately three to four feet from the doorway of the bedroom. At approximately 10:00 p.m. or 11:00 p.m. the same day, Craven's stepdaughter, C.H., returned home accompanied by a girlfriend K.B., and two boys with whom she was friendly, J.M. and Appellant.

¶ 3 J.M. indicated he needed to use the bathroom, so C.H. accompanied J.M. and Appellant to the second floor bathroom while K.B. remained downstairs speaking on the telephone with her mother. Mrs. Craven was also downstairs. Thereafter, C.H., J.M., and Appellant went to C.H.'s bedroom on the third floor. Appellant indicated he needed to use the bathroom. Appellant went to the second floor bathroom for approximately five minutes before rejoining the others. When Appellant returned, he appeared nervous, refused to sit facing his friends, continuously pulled at his pants, and complained to J.M. that he wanted to leave. Within five to ten minutes of returning to the third-floor bedroom, Appellant left the residence. He was the first to leave and was outside C.H.'s home before the rest of the group came downstairs.

¶ 4 Mr. Craven returned home at approximately 11:30 p.m. and, upon entering his bedroom, realized his firearm was missing. Although he searched the premises thoroughly and questioned Mrs. Craven, C.H., and K.B., the firearm was not found.

¶ 5 Mr. Craven reported the firearm stolen to the Pittsburgh Police Department, which assigned the investigation to Officer Gagliardi. In the course of the investigation, Officer Gagliardi questioned Appellant several times over a three-week period prior to the Commonwealth issuing a warrant for Appellant's arrest. On October 14, 2003, Officer Gagliardi came to Appellant's residence, informed Appellant's parents about the warrant issued for Appellant's arrest, and arrested Appellant. Officer Gagliardi then transported Appellant to the Municipal Courts Building for processing. At no point did Officer Gagliardi inform Appellant of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

¶ 6 During the ride from Appellant's residence to the Municipal Courts Building, Officer Gagliardi made the following statement,

> I told him that my interest is in returning this firearm, and if he would somehow—he can help himself if he would give this firearm back to me or know who has it, we'd go from there, and hopefully it would benefit him down the road, and I would stand up for him and let everybody know in the criminal justice system what a good deed he did by returning this firearm.

(N.T. Hearing, 12/18/03, at 45–46). In response, Appellant told Officer Gagliardi that J.M. had assisted in the theft of the firearm, that he had attempted to get the firearm back from J.M., but that J.M. had given the firearm to a third party. (*Id.* at 50). The firearm was never found.

¶7 On December 18, 2003, the trial court held an adjudicatory hearing on the matter. In the midst of the Commonwealth's case, counsel voiced a motion to suppress any admission and/or statements made by Appellant to Officer Gagliardi. Apparently, that morning, counsel had received a supplemental police report which included information regarding the above-quoted exchange between Officer Gagliardi and Appellant. The court denied the motion to suppress and adjudicated Appellant delinquent of theft by unlawful taking[1] and possession of a firearm by a minor.[2] The court sentenced Appellant: (1) to be placed on probation, (2) to complete one hundred (100) hours of community service, (3) to attain his GED, (4) to pay $349.50 in restitution, (5) to suspended commitment to VisionQuest Boot and Hat Camp, and (6) to maintain no contact with co-defendant or plaintiffs.

¶8 On January 14, 2004, Appellant filed an appeal to this Court. On January 20, 2004, the trial court ordered Appellant to file a concise statement of matters complained of on appeal[3] due within fourteen (14) days. Appellant filed a petition for extension of time to file the Rule 1925(b) statement on February 2, 2004, but it was not granted. Appellant filed his Rule 1925(b) statement on February 10, 2004, seven days after the fourteen-day deadline had passed. The trial court filed its opinion in response to Appellant's Rule 1925(b) statement on March 17, 2004. This appeal followed.

¶9 Appellant requests that the following issues be reviewed on appeal:

DID THE COMMONWEALTH PRESENT SUFFICIENT EVIDENCE FOR [APPELLANT] TO BE CONVICTED OF THEFT WHEN THE EVIDENCE PRESENTED ONLY ESTABLISHED THAT [APPELLANT] WAS IN THE AREA WHERE A THEFT OCCURRED?

[WERE APPELLANT'S] *MIRANDA* RIGHTS VIOLATED WHEN HE WAS SUBJECTED TO QUESTIONING AFTER ARREST WITHOUT FIRST BEING ADVISED OF HIS *MIRANDA* RIGHTS AND WHEN HE WAS QUESTIONED OUTSIDE THE PRESENCE OF HIS PARENTS AND HIS ATTORNEY?

(Appellant's Brief at 5).

¶10 Before we may proceed with an examination of Appellant's issues, we must first determine whether the issues are properly before us. An appellant must file a concise statement of matters complained of on appeal when ordered to do so by the trial court. Pa.R.A.P. 1925(b). Any issue not raised in the Rule 1925(b) statement will be deemed waived. *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998). The trial court may refuse to review an appellant's issues where the appellant has failed to file a timely Rule 1925(b) statement. *Commonwealth v. Kimble*, 756 A.2d 78, 80 (Pa.Super.2000), *appeal denied*, 566 Pa. 659, 782 A.2d 543 (2001). However, when the appellant's Rule 1925(b) statement is untimely and the trial court nevertheless addresses the issues on appeal in an opinion, there is no impediment to appellate review by this Court. *Commonwealth v. Ortiz*, 745 A.2d 662 (Pa.Super.2000), *appeal denied*, 568 Pa. 658, 795 A.2d 973 (2000).

¶11 Instantly, Appellant's Rule 1925(b) statement was filed seven days beyond the due date. Still, the trial court issued an opinion addressing Appellant's

---

1. 18 Pa.C.S.A. § 3921.

2. 18 Pa.C.S.A. § 6110.1.

3. Pursuant to Pa.R.A.P. 1925(b).

issues on appeal on March 17, 2004. Accordingly, we find no impediment to meaningful review and address the appeal before us. *See Ortiz, supra.*

¶ 12 We will address Appellant's second issue first because it is dispositive of the case as a whole. Appellant asserts his constitutional rights were violated when Officer Gagliardi subjected him to questioning after arrest without informing him of his *Miranda* rights. He alleges that while in police custody, Officer Gagliardi made statements designed to elicit incriminating information from him. Appellant contends his incriminating statements were prejudicial. Thus, Appellant . concludes the trial court erred when it denied his motion to suppress. We agree.

¶ 13 Our standard of review when addressing a challenge to a trial court's denial of a suppression motion is:

> [L]imited to determining whether the findings of fact are supported by the record and whether the legal conclusions drawn from those facts are in error. In making this determination, this court may only consider the evidence of the Commonwealth's witnesses, and so much of the evidence for the witnesses for Appellant, as fairly read in the context of the record as a whole, which remains uncontradicted. If the evidence supports the findings of the trial court [, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are erroneous.]

*Commonwealth v. Jones,* 758 A.2d 228, 229 (Pa.Super.2000), *appeal denied,* 564 Pa. 727, 766 A.2d 1245 (2001) (internal citations omitted).

¶ 14 Pennsylvania law is well settled:

> The Fifth Amendment right to counsel and the concomitant rights guaranteed by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) are only triggered when an individual is undergoing actual custodial interrogation. Whether a person is in custody for *Miranda* purposes depends on whether the person is physically denied his freedom of action in any significant way or is placed in a situation which he reasonably believes that his freedom of action or movement is restricted by this interrogation. The subjective intent of the interrogating officer is not relevant to a determination of whether an interrogation was custodial. Rather, the paramount focus is on whether the individual being interrogated reasonably believes that his freedom of action is being restricted.

*Commonwealth v. Ellis,* 700 A.2d 948, 954 (Pa.Super.1997), *appeal denied,* 556 Pa. 671, 727 A.2d 127 (1998) (most citations and quotation marks omitted). "Interrogation" is defined as police questioning or conduct calculated, expected, or likely to evoke an admission. *Commonwealth v. Bess,* 789 A.2d 757, 762 (Pa.Super.2002). *See also Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980) (holding term "interrogation" under '*Miranda* refers not only to express questioning, but also to any words or actions on part of police, other than those normally attendant to arrest and custody, that police should know are reasonably likely to elicit incriminating response from suspect). The circumstances must reflect a measure of compulsion above and beyond custody itself. *Bess, supra.* The law is clear, however, that "a statement which is spontaneously volunteered is admissible notwithstanding a prior assertion of constitutional rights." *Commonwealth v. Bracey,* 501 Pa. 356, 370, 461 A.2d 775, 782 (1983) (citing *Commonwealth v. Scarborough,* 491 Pa. 300, 421 A.2d 147 (1980)).

¶ 15 In the instant case, Officer Gagliardi arrested Appellant at his home, handcuffed him, placed in the back of the police cruiser, and transported him, unaccompanied by a parent, to the Municipal Courts Building. During the ride, Officer Gagliardi made the following statements to Appellant:

> I told him that my interest is in returning this firearm, and if he would somehow—he can help himself if he would give this firearm back to me or know who has it, we'd go from there, and hopefully it would benefit him down the road, and I would stand up for him and let everybody know in the criminal justice system what a good deed he did by returning this firearm.

(N.T. at 45–46). Officer Gagliardi testified that in response, Appellant stated:

> [H]is friend, [J.M.], assisted in the theft of the firearm and that he tried to talk to him to get the firearm back and [J.M.] indicated to him that he doesn't have the firearm, he gave it to somebody else.

(*Id.* at 50). At no time did Officer Gagliardi explain to Appellant his *Miranda* rights.

¶ 16 Although Officer Gagliardi did not specifically ask Appellant any questions, Officer Gagliardi should have been aware his statement would likely elicit an incriminating response from Appellant. *See Bess, supra.* Thus, we conclude his statement was the functional equivalent of an interrogation. *Id.* Moreover, in its brief, the Commonwealth concedes "Officer Gagliardi's statements to Appellant were designed to evoke an incriminating response, and therefore, the functional equivalent of interrogation," (Commonwealth's Brief at 5), and should have been suppressed. Accordingly, we hold the situation represented a "custodial interrogation" and Appellant was therefore entitled to the opportunity to assert his *Miranda* rights. *See Ellis, supra.* Therefore, the trial court erred in denying Appellant's motion to suppress, and in admitting this evidence at the adjudicatory hearing. The admission of the statement prejudiced Appellant to the degree that a new hearing is required. Based upon the foregoing, we reverse the trial court's denial of Appellant's motion to suppress, vacate the delinquency order, and remand for a new adjudicatory hearing.

¶ 17 Order vacated; case remanded for new adjudicatory hearing. Jurisdiction is relinquished.