J-S75031-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANIEL LITES, | |
| Appellant | No. 1151 EDA 2014 |

Appeal from the Judgment of Sentence entered March 31, 2014,
in the Court of Common Pleas of Delaware County,
Criminal Division, at No(s): CP-23-CR-0003235-2013

BEFORE:  ALLEN, LAZARUS, and MUNDY, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED DECEMBER 08, 2014**

Daniel Lites ("Appellant") appeals from the judgment of sentence imposed after the trial court convicted him of two counts of robbery (serious bodily injury threatened), one count of theft by unlawful taking, and two counts of conspiracy to commit robbery.[1]  Appellant committed the crimes when he was fifteen (15) years old, and he was tried as an adult.

The trial court summarized the pertinent factual and procedural history as follows:

> On November 9, 2012, at about 7:05 p.m., a pizza delivery man in East Lansdowne, Pennsylvania was getting into his delivery vehicle when [Appellant] pointed a gun at him and demanded money.  When the delivery man was slow to respond, [Appellant] struck him in the face, pointed his gun and again demanded money.  After this victim gave him over $400.00,

---

[1] 18 Pa.C.S.A. §§ 3701(a)(ii), 3921(a), and 903.

[Appellant] and an accomplice fled on foot. See Exhibit C-1 pp. 5-10.

The next day, November 10, 2012, at about 7:00 p.m., [Appellant] entered a Chinese restaurant while an accomplice acted as a lookout. [Appellant] pointed a gun at the cook's head and demanded money. When he did not respond to the demand for money, [Appellant] moved on to the cashier. He grabbed her by the neck, pointed his gun at her and demanded money. She opened the cash register drawer and he took over $200.00 in cash and fled. Id. at 16-22.

On the following day, November 11, 2012, at about 2:50 p.m., [Appellant] approached a pedestrian and asked to use his iPhone. The victim allowed him to use the phone and [Appellant] ran away with it. A chase ensued but [Appellant] escaped with the iPhone. Later the same day, [Appellant] made several calls from the stolen phone, including one to his mother. See id. at 37-38; N.T., 1/15/14 pp. 5-8.

A search warrant for [Appellant's] residence seeking among other things, the iPhone and a photo of [Appellant], was issued and executed on November 15, 2012. [Appellant] was not at the residence when the warrant was [executed] and neither the iPhone nor a current photograph of [Appellant] were located. He did however appear at the Lansdowne Borough Police Department later on the same day to be photographed. At the police station, [Appellant] made admissions which implicated him in all three of the foregoing incidents. See Exhibit C-1, pp. 41-42.

[Appellant's] preliminary hearing was conducted on May 17, 2013 and at its conclusion he was held on all charges relating to these matters. [Appellant] filed a motion to suppress statements he gave on November 15, 2012. On September 19, 2013, an evidentiary hearing addressing [Appellant's] motion to suppress was held. The Court entered an Order denying the motion on October 3, 2013.

The matter then proceeded by way of a stipulated bench trial at which [Appellant] was found guilty of the charges set forth above. An aggregate sentence of eight to sixteen years of incarceration to be followed by four years of probation was imposed. [Appellant] filed a timely Notice of Appeal on April 7, 2014. [Both the trial court and Appellant have complied with Pa.R.A.P. 1925.]

Trial Court Opinion, 5/22/14, at 1-3 (footnote omitted).

Appellant presents two suppression issues on appeal:

> *Whether the actions of the Police Officers in conducting a detailed interview with the Appellant who was a minor, without giving him Miranda Warnings and without a parent or guardian present, was in violation of Appellant's Constitutional rights?*

> *Whether the totality of the circumstances, including the fact that the Police failed to properly notify Appellant's mother of his Constitutional rights, including his right to remain silent, invalidates the waiver of his Miranda Rights?*

Appellant's Brief at 4. Within the argument section of his brief, Appellant conflates the above issues in one argument section. **See** Appellant's Brief at 8-12. In response, the Commonwealth counters that Appellant was not in custody when he voluntarily appeared at the police station, and then voluntarily waived his **Miranda**[2] rights when he gave his statement to police. Commonwealth Brief at 7.

Our standard of review of the trial court's denial of a suppression motion is as follows:

> An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Reese***, 31 A.3d 708, 721 (Pa. Super. 2011) (citations omitted). Moreover, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given to their testimony. The suppression court is free to believe all, some or none of the evidence presented at the suppression hearing." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003) (citations omitted).

Here, the particular facts and circumstances are critical to our review. As the finder of fact and arbiter of credibility, the trial court has offered reasoning which is both accurate and persuasive. We therefore adopt the opinion of the Honorable James P. Bradley, sitting as the trial court, in disposing of this appeal. In addition to citing prevailing case law, Judge Bradley observed:

> [] [Appellant] was not "in custody" when he arrived at the Lansdowne Police Department []. Sergeant Cadden executed the search warrant at [Appellant's] home earlier in the day and left word that [Appellant] should contact him. [Appellant] knew that there was an ongoing investigation and that Sergeant Cadden wanted his photograph. [Appellant] was not arrested. He was not transported to the police station; he arrived on his own. Sergeant Cadden retrieved a camera and then he too, went to the Lansdowne police station. [Appellant] spent no more than a few minutes with Sergeant Cadden before he began to implicate himself in the theft and robberies and at that point Sergeant Cadden immediately interrupted [Appellant]. At no point was [Appellant] handcuffed, searched or threatened in any way. ***While [Appellant's] age is a relevant factor that must be considered, it alone does not dictate a finding***

***that he was in custody***. Additionally, while the fact that [Appellant] was the focus of an investigation has been considered, given the totality of the circumstances in this case the conclusion that by appearing at the police station he was yielding to the functional equivalent of an arrest does not follow. [Appellant] was asked to contact Sergeant Cadden. He appeared at the police station of his own volition and not subject to a prolonged period of detention or interrogation. He was never threatened, handcuffed, searched or physically restrained. If [Appellant] believed that he was not free to leave the police station immediately after his arrival, that belief was not objectively reasonable. In fact, as Sergeant Cadden was taking [Appellant's] photograph, he suggested that they meet later along with his mother or father to take a statement. While Sergeant Cadden did not say explicitly, "you are free to leave," he repeatedly suggested that all of the interested parties should meet later and that he sought only a photograph.

Assuming *arguendo* that after admitting involvement in the "iPhone robbery," [Appellant] was "in custody," the circumstances demonstrate that the waiver that followed was knowing and voluntary. As soon as [Appellant] implicated himself in the iPhone incident and began to make statements that inculpated him in two other robberies, Sergeant Cadden ended the conversation. He told [Appellant] he would not take a statement without his mother or a guardian present and, over the [Appellant's] objection, insisted that he call his mother. [Appellant] spoke with his mother privately, and then Sergeant Cadden spoke with her. Sergeant Cadden told her that he was investigating a series of robberies and that [Appellant] had information that might implicate him. He told her that he wanted her to be present when her son was interviewed, and that "these were very, very serious charges and that I would be happy to wait." She was not interested in attending an interview at any time and told Sergeant Cadden to go ahead with the interview. [Appellant] spoke with his mother again and, after obtaining an advice of rights form, Sergeant Cadden read [Appellant] his rights. [Appellant] stated that he understood each one of his rights as they were read, he initialed his responses to each question read and he executed his waiver by signing the form.

***

> [I]n Commonwealth v. Knox, 50 A.3d 732 (Pa. Super. 2012) a seventeen year old defendant's waiver was voluntary, knowing and intelligent although his statement was given outside his father's presence. In Knox, the defendant's father was contacted but declined to go to the police station for the interrogation when his son was arrested following a shooting. The court explained that the remaining circumstances including the defendant's age and experience, the brevity of his detention and the fact that he demonstrated no difficulty in understanding the questions on the *Miranda* form supported a valid waiver.
>
> In this case, the fifteen year old [Appellant] voluntarily appeared at the police station. He was not transported, searched or handcuffed. As Sergeant Cadden photographed [Appellant] he began to make statements implicating him and Sergeant Cadden immediately stopped the conversation. He advised [Appellant] that his mother's presence would be required before a statement would be taken. Over [Appellant's] "adamant" objection, Sergeant Cadden told [Appellant] to call his mother. [Appellant] spoke to his mother privately and then Sergeant Cadden spoke with her and advised her that the charges were very serious and that she should be present. He made the same suggestion to her that he had made to [Appellant]; he offered to schedule a meeting for a statement later, when she could be present. She declined and then she spoke to [Appellant] again. When [Appellant] and his mother both told him that she would not be coming to the station and that [Appellant] wanted to give a statement, Sergeant Cadden retrieved an advice of rights form, reviewed the form with [Appellant] and he executed the waiver. There is no evidence that [Appellant] is of less than normal intelligence or that he suffers from a condition that would preclude a knowing and intelligent waiver. Under these circumstances, as in Knox, supra, [Appellant's] waiver was knowing and intelligent.

Trial Court Opinion, 5/22/14, at 8-9, 12-13 (emphasis supplied, citations to some case law and notes of testimony omitted).

The trial court's reasoning is supported by our review of the record. Sergeant Cadden was the sole witness at the suppression hearing. He testified that Appellant "started talking in great detail. Realizing his age I

said that I'm going to need to speak to your guardian, your mother …" N.T., 9/19/13, at 16. Sergeant Cadden testified that Appellant "Was very adamant about not having her present." *Id*. at 17. He stated:

> I told [Appellant] that no, that's not how it works. It's not going to happen. I must speak with his mother and he said over and over again, well, she's at work right now. And then I instructed him to call her at work. It's a very serious matter. And at that point he did ultimately. And I left him unattended to call his mother and then he handed me the phone and I spoke to a person whose voice I knew to be his mother.

*Id*. at 18. Sergeant Cadden stated that Appellant's mother told him she was at work and "can't make it" and said, "no, go ahead, some – expressing frustration with [Appellant] and his problems." *Id*. at 19. Sergeant Cadden specifically testified that Appellant's mother gave permission for the interview, and "rejected" Sergeant Cadden's offer to wait. *Id*. at 20, 34. Sergeant Cadden said that he "was only expecting to take a photograph", but subsequently "went through each of the *Miranda* warnings in great detail" before talking further with Appellant. *Id*. at 22.

Given the foregoing, we discern no trial court error, and adopt the entire trial court opinion as our own. The parties shall attach copies of Judge Bradley's May 22, 2014 opinion in the event of future proceedings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/8/2014

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA : CP-23-CR-3235-2013
:
vs. :
:
DANIEL LITES :
:
:

Eileen Courtney, Esquire, on behalf of the Commonwealth
Michael J. Malloy, on behalf of the Defendant

# OPINION

Bradley, J. FILED: 5/22/2014

Defendant Daniel Lites was found guilty of two counts of robbery, serious bodily injured threatened,[1] one count of theft by unlawful taking[2] and two counts of criminal conspiracy to commit robbery[3]. These convictions arose from three different incidents, all of which were committed when the Defendant was fifteen years old. He was tried as an adult. See 42 Pa.C.S.A. § 6302. See also Commonwealth v. Ramos, 920 A.2d 1253 (Pa. Super. 2007).

On November 9, 2012 at about 7:05 p.m. a pizza delivery man in East Lansdowne, Pennsylvania was getting into his delivery vehicle when Defendant pointed a gun at him and demanded money. When the delivery man was slow to respond the Defendant struck him in

---

[1] 18 Pa.C.S.A. § 3701(a)(ii)
[2] 18 Pa.C.S.A. § 3921(a)
[3] 18 Pa.C.S.A. § 903.

1

the face, pointed his gun and again demanded money. After this victim gave him over $400.00 the Defendant and an accomplice fled on foot. See Exhibit C-1 pp. 5-10.

The next day, November 10, 2012, at about 7:00 p.m. the Defendant entered a Chinese restaurant while an accomplice acted as a lookout. Defendant pointed a gun at the cook's head and demanded money. When he did not respond to the demand for money Defendant moved on to the cashier. He grabbed her by the neck, pointed his gun at her and demanded money. She opened the cash register drawer and he took over $200.00 in cash and fled. Id. at 16-22.

On the following day, November 11, 2012at about 2:50 p.m. Defendant approached a pedestrian and asked to use his iPhone. The victim allowed him to use the phone and Defendant ran away with it. A chase ensued but the Defendant escaped with the iPhone. Later the same day Defendant made several calls from the stolen iPhone, including one to his mother. See id. at 37-38; N.T. 1/15/14 pp. 5-8.

A search warrant for Defendant's residence seeking among other things, the iPhone and a photo of the Defendant, was issued and executed on November 15, 2012. The Defendant was not at the residence when the warrant was issued and neither the iPhone nor a current photograph of the Defendant were located. He did however appear at the Lansdowne Borough Police Department later on the same day to be photographed. At the police station Defendant made admissions which implicated him in all three of the foregoing incidents. See Exhibit C-1, pp. 41-42.

Defendant's preliminary hearing was conducted on May 17, 2013 and at its conclusion he was held on all charges relating to these matters. Defendant filed a motion to suppress

statements that he gave on November 15, 2012.[4] On September 19, 2013 an evidentiary hearing addressing Defendant's motion to suppress was held. The Court entered an Order denying the motion on October 3, 2013.

The matter then proceeded by way of a stipulated bench trial at which Defendant was found guilty of the charges set forth above. An aggregate sentence of eight to sixteen years of incarceration to be followed by four years of probation was imposed. Defendant filed a timely Notice of Appeal on April 7, 2014. In his "Statement of Matters Complained of on Appeal," Defendant claims that the trial court erred when it failed to suppress his statements. Specifically, Defendant claims that Defendant was not advised of his *Miranda* rights before a custodial statement was taken, and that any subsequent waiver of *Miranda* rights was not voluntary, knowing and intelligent because he did not consult with a parent or other adult before waiving his rights. In connection with these claims Defendant contends that although an officer spoke to Defendant's mother by telephone and sought permission to speak to Defendant, "at no time was Defendant's mother asked if she would like to be present for the interview." Finally, Defendant claims that law enforcement's failure to advise his mother of his *Miranda* rights and failure to offer him the opportunity to consult with his mother or an interested adult rendered his statements inadmissible at trial.

Statements made during custodial interrogation are presumptively involuntary, unless the accused is first advised of his or her *Miranda* rights. Custodial interrogation is

---

[4] A motion to quash charges related to the "iPhone" incident was also filed. The victim in that incident did not testify at the preliminary hearing and Defendant moved to quash on that basis. On January 15, 2014 the Court heard the testimony of the victim, James Cox, and of Sergeant James Cadden, the investigating officer. Following that hearing the Commonwealth moved to amend the Informations without objection and in Count 21, theft by unlawful taking, was added. At trial, regarding the "iPhone" incident, the Commonwealth proceeded on this charge alone. See N.T. 3/31/14 pp. 10-11.

3

"questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [her] freedom of action in any significant way." "[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." Id. A person is deemed to be in custody for *Miranda* purposes when "[he] is physically denied of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." In re C.O., 84 A.3d 726, 732 (Pa. Super. 2014) *quoting* Commonwealth v. Williams, 650 A.2d 420, 427 (Pa. 1994). "The subjective intent of the interrogating officer is not relevant to a determination of whether an interrogation was custodial. Rather, the paramount focus is on whether the individual being interrogated reasonably believes that his freedom of action is being restricted. Commonwealth v. Ellis, 700 A.2d 948, 955 (Pa. Super. 1997). See also In re D.H., 863 A.2d 562 (Pa. Super. 2004).

To avoid suppression based on a violation of *Miranda*, "it is the Commonwealth's burden to establish by preponderance that a defendant knowingly and voluntarily waived his *Miranda* rights. To meet its burden the Commonwealth must demonstrate "that the proper warnings were given, and that the accused manifested an understanding of these warnings." Commonwealth v. Kunkle, 79 A.3d 1173, 1179 -1180 (Pa. Super. 2013). See also Commonwealth v. Baez, 21 A.3d 1280 (Pa. Super. 2011).

Sergeant James Cadden of the East Lansdowne Police Department investigated the November 11th "iPhone" incident and in the course of his investigation he obtained a search warrant for 109 Atlantic Avenue which is located in the Borough of Lansdowne. N.T. 9/19/13 pp. 8-11. The warrant authorized a search and seizure of *inter alia*, an iPhone and a

4

photograph of the Defendant. Id. at 14, 28. Defendant's mother resided at this address with several family members. Sergeant Cadden knew both the Defendant and his mother from previous interactions. Id. at 8-11. The warrant was executed at about 4:00 p.m. The Defendant was not at the residence at the time and Sergeant Cadden was unable to obtain a current photo. Sergeant Cadden "left word with family members to have the Defendant contact [him.]" Id. at 15, 29.

Later in the day Sergeant Cadden received a call from the Lansdowne Police Department. Defendant had appeared at the Lansdowne Police Department to be photographed. Id. at 15. Sergeant Cadden went to his home station in East Lansdowne, picked up his camera and continued on to the Lansdowne station where he met the Defendant. Id. Sergeant Cadden told the Defendant that he wanted to take the photograph because he was investigating the iPhone robbery. Id. at 16. Sergeant Cadden testified:

A. Okay. I notified him as far as the cell phone robbery, what it had been about and why the photograph was being taken. And at that point he began speaking about the crime itself, the cell phone robbery.

Q. All right. And what did you do then when he started saying something?

A. Well, he started talking in great detail. Realizing his age I said that I'm going to need to speak with your guardian, your mother, and...

Q. All right. So in other words did you stop him?

Q. Oh, yes, ma'am.

Id. at 16. See also id. at 34.

Sergeant Cadden took Defendant's photo, telling Defendant that they could meet later for a statement with his mother or father in attendance. Id. at 37. Sergeant Cadden instructed Defendant to contact his mother, advising him further that he "needed" her to be

5

present when Defendant gave a statement. Id. at 17. Defendant was "adamant." Id. at 18.

He stated that his mother was at work and he did not want her present. Id. Ultimately

Sergeant Cadden prevailed. He left Defendant unattended to call his mother. Defendant

made the call, spoke to his mother alone and then gave Sergeant Cadden the telephone. Id.

Sergeant Cadden spoke with the Defendant's mother. He told her that he was

investigating a series of robberies and that Daniel had information that might implicate him.

Id. at 19. Although he did not read her the Miranda rights, he told her that he wanted her to

be present when her son was interviewed, and that "these were very, very serious charges

and that I would be happy to wait." Id. at 19, 34-35. When she replied that she was working

late and couldn't "make it," Sergeant Cadden said that the interview could wait until she

could come in. Id. She refused Sergeant Cadden's offer, instructed him to "go ahead," with

the interview and expressed her frustration with her son and with his problems. Id. at 19-20.

Sergeant Cadden handed the phone back to the Defendant and he spoke to his mother

again. Id.

Sergeant Cadden obtained a tape recorder and an East Lansdowne Police Department

advice of rights form. Sergeant Cadden administered the Miranda warnings, adding

Defendant's responses to each question asked, including the last question which states that

he understood his rights and was willing to give them up and answer questions. Id. at 22.

Defendant initialed each response and added his initials and signed the waiver portion. Id.

See Exhibit CS-2. Sergeant Cadden requested a warrant for Defendant's arrest the following

day and the warrant was issued on November 17, 2013. See Criminal Complaint; Arrest

Warrant.

6

A person questioned by law enforcement officers after being " 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." In re V.H., 788 A.2d 976 (Pa. Super. 2001) *quoting* Stansbury v. California, 511 U.S. 318, 322–323, 114 S.Ct. 1526, 1528–1529, 128 L.Ed.2d 293 (1994). Whether an individual is in "custody" is an initial determination that depends on the objective circumstances of the interrogation, rather than on "the subjective views harbored by either the interrogating officers or the person being questioned." The "ultimate inquiry" is whether there is a formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest. Id. The fact that a defendant is the focus of an investigation does not, without more circumstances demonstrating that his freedom was restricted, necessarily lead to the conclusion that a defendant is in "custody." Id. *citing* Beckwith v. United States, 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). In In re V.H., supra, when considering whether a juvenile who was interviewed at his home was "in custody," the Court explained:

> The test for determining whether a suspect is being subjected to custodial interrogation so as to necessitate *Miranda* warnings is whether he is physically deprived of his freedom in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation..... 337, 549 A.2d 'Indeed, police detentions only become 'custodial' when under the totality of circumstances the conditions and/or duration of the detention become so coercive as to constitute the functional equivalent of formal arrest.' Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so coercive as to constitute the functional equivalent of a formal arrest are: the

7

basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions. Id. at 980.

When the foregoing principles are applied to the facts of this case, the conclusion that Defendant was not "in custody" when he arrived at the Lansdowne Police Department follows. Sergeant Cadden executed the search warrant at the Defendant's home earlier in the day and left word that Defendant should contact him. Defendant knew that there was an ongoing investigation and that Sergeant Cadden wanted his photograph. Defendant was not arrested. He was not transported to the police station; he arrived on his own. Sergeant Cadden retrieved a camera and then he too, went to the Lansdowne police station. Defendant spent no more than a matter of a few minutes with Sergeant Cadden before he began to implicate himself in the theft and robberies and at that point Sergeant Cadden immediately interrupted Defendant. At no point was the Defendant handcuffed, searched or threatened in any way. While Defendant's age is a relevant factor that must be considered, it alone does not dictate a finding that Defendant he was in custody. Additionally, while the fact that Defendant was the focus of an investigation has been considered, given the totality of the circumstances in this case the conclusion that by appearing at the police he was yielding to the functional equivalent of an arrest does not follow. See Commonwealth v. Busch, 713 A.2d 97 (Pa. Super. 1998) citing Commonwealth v. Peters, 642 A.2d 1126, 1130 (1994). Defendant was asked to contact Sergeant Cadden. He appeared at the police station of his own volition and not subject to a prolonged period of detention or

interrogation. He was never threatened, handcuffed, searched or physically restrained. If Defendant believed that he was not free to leave the police station immediately after his arrival that belief was not objectively reasonable. Compare In re K.Q.M., 873 A.2d 752 (Pa.Super. 2005) (belief that he was not free to leave was objectively reasonable where sixteen year-old questioned at 3:00 a.m. by uniformed officers in co-defendant's home with no parental notification). In fact, as Sergeant Cadden was taking Defendant's photograph he suggested that they meet later along with his mother or father to take a statement. While Sergeant Cadden did not say explicitly, "you are free to leave," he repeatedly suggested that all of the interested parties should meet later and that he sought only a photograph. Id. at 37.

Assuming *arguendo* that after admitting involvement in the "iPhone robbery," Defendant was "in custody," the circumstances demonstrate that the waiver that followed was knowing and voluntary. As soon as the Defendant implicated himself in the iPhone incident and began to make statements that inculpated him in two other robberies Sergeant Cadden ended the conversation. He told the Defendant that he would not take a statement without his mother or a guardian present and, over the Defendant's objection insisted that he call his mother. Defendant spoke with his mother privately, and then Sergeant Cadden spoke with her. Sergeant Cadden told her that he was investigating a series of robberies and that Daniel had information that might implicate him. He told her that he wanted her to be present when her son was interviewed, and that "these were very, very serious charges and that I would be happy to wait." She was not interested in attending an interview at any time and told Sergeant

9

Circulated 11/13/2014 11:27 AM

Cadden to go ahead with the interview. Defendant spoke with his mother again and, after obtaining an advice of rights form Sergeant Cadden read the Defendant his rights. Defendant stated that he understood each one of his rights as they were read, he initialed his responses to each question read and he executed his waiver by signing the form.

Juveniles are protected by the rights that Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), affords. See e.g. In re K.Q.M., 873 A.2d 752, 755 (Pa. Super. 2005). However, there is no *per se* requirement that an informed adult must be present before a juvenile can waive his *Miranda* rights. In Commonwealth v. Williams, 475 A.2d 1283 (Pa. 1984) the Supreme Court rejected the application of the existing rebuttable presumption that a juvenile is incompetent to waive his constitutional rights without first having an opportunity to consult with an interested and informed adult. Reaffirming the principle that a juvenile may not be subject to custodial interrogation before voluntarily, knowingly and intelligently waiving his *Miranda* rights, the Court held that a "totality of the circumstances" analysis is applicable and that all of the attending facts and circumstances, including whether an interested adult was available for consultation, must be considered when determining whether a "juvenile's confession was knowingly and freely given." In *Williams*, the court answered that question affirmatively. The defendant was seventeen and a half years old, he had considerable experience in the juvenile justice system, he was arrested and detained but was not subject to any physical or psychological abuse, he was not threatened, no promises were made, he was responsive to questions asked of him, he

10

was in custody for less than two hours, and he was questioned for little more than an hour before he made a confession and he had an opportunity to talk with his father before he was advised of his rights, in his father's presence.

Defendant claims that his waiver was not knowing and intelligent because he was fifteen and was not afforded an opportunity to consult with or have an informed adult present. In support he relies on In re T.B., 11 A.3d 500 (Pa. Super. 2010) where the Superior Court found that the juvenile defendant's voluntary waiver was not knowing and intelligent. T.B. was arrested while driving a stolen vehicle. He was in a "juvenile holding facility." Three days before his arrest his mother had been contacted by a detective who was investigating a series of burglaries and wanted her permission to speak with T.B. She said she would arrange for her son to speak to the police. After his arrest another officer obtained the mother's permission to speak with T.B. about the burglaries and the stolen car incident. There was no indication that the officer discussed T.B.'s *Miranda* rights with his mother. T.B. was kept in a holding cell for two hours before he was advised of his *Miranda* rights. He waived those rights and was interviewed. He admitted that he had participated in four burglaries and had stolen the vehicle in question. The parties stipulated that T.B.'s I.Q. was sixty-seven, he read at a third grade level, and that he was never arrested before.

The Superior Court found that T.B.'s waiver was not knowing and intelligent. Its examination of the "totality of the circumstances: included the following: the appellant was arrested and placed in a juvenile holding cell for two hours; officer's contacted his mother before speaking to him and asked if they could discuss several burglaries with

11

T.B.; she was not advised of his rights and she was not asked to be present; T.B. was not offered an opportunity to speak with his mother or an interested adult and he did not consult with an interested adult; T.B. was fifteen years-old, had no prior experience with law enforcement, had an IQ of 67 and read at a third grade level. Id. at 508.

In contrast, in Commonwealth v. Knox, 50 A.3d 732 (Pa. Super. 2012) a seventeen year old defendant's waiver was voluntary, knowing and intelligent although his statement was given outside his father's presence. In Knox, the defendant's father was contacted but declined to go to the police station for the interrogation when his son was arrested following a shooting. The court explained that the remaining circumstances including the defendant's age and experience, the brevity of his detention and the fact that he demonstrated no difficulty in understanding the questions on the *Miranda* form supported a valid waiver.

In this case the fifteen year-old Defendant voluntarily appeared at the police station. He was not transported, searched or handcuffed. As Sergeant Cadden photographed Defendant he began to make statements implicating him and Sergeant Cadden immediately stopped the conversation. He advised Defendant that his mother's presence would be required before a statement would be taken. Over the Defendant's "adamant" objection Sergeant Cadden told the Defendant to call his mother. Defendant spoke to his mother privately and then Sergeant Cadden spoke with her and advised her that the charges were very serious and that she should be present. He made the same suggestion to her that he had made to the Defendant: he offered to schedule a meeting for a statement later, when she could be present. She declined and then she

12

spoke to the Defendant again. When Defendant and his mother both told him that she would not be coming to the station and that Defendant wanted to give a statement Sergeant retrieved an advice of rights form, reviewed the form with the Defendant and he executed the waiver. There is no evidence that Defendant is of less than normal intelligence or that he suffers from a condition that would preclude a knowing and intelligent waiver. Under these circumstances, as in Knox, supra, Defendant's waiver was knowing and intelligent.

In summary, all of the foregoing circumstances compel the conclusion the waiver was voluntary, that is, "it was the product of a free and deliberate choice rather than intimidation, coercion or deception." In re T.B., 11 A.3d at 505. Compare, In Interest of C.L., 714 A.2d 1074 (Pa. Super. 1998) ( fourteen year-old's statement given outside parents' presence after he was subjected to physical and verbal threats and placed in jail cell was not freely given). In light of the foregoing, it is respectfully submitted that judgment of sentence should be affirmed.

BY THE COURT:

James P. Bradley,                                          J.

FILED

2014 MAY 22 AM 9: 48

OFFICE OF
JUDICIAL SUPPORT
DELAWARE CO PA.