J-S02004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT BISHOP | : | |
| | : | |
| Appellant | : | No. 1193 EDA 2016 |

Appeal from the Judgment of Sentence April 15, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003894-2015

BEFORE: BOWES, J., NICHOLS, J., and RANSOM, J.*

MEMORANDUM BY BOWES, J.:                              **FILED JUNE 18, 2018**

Scott Bishop appeals from the judgment of sentence of three to eight years incarceration and two years probation, imposed following his convictions of possession of a firearm, possession of marijuana, and possession of paraphernalia. We affirm.

We adopt the following factual summary, as set forth in the trial court's supplemental Pa.R.A.P. 1925(a) opinion:

> On March 28, 2015, State Parole Agent Brandon Smith went to [Appellant]'s home at 5011 North Third Street in Philadelphia to conduct a home visit. [Appellant] was on state parole, and Agent Smith had supervised [him] since September 2014.
>
> When Agent Smith arrived at [Appellant]'s home, [Appellant] let Agent Smith into his home. After a brief discussion, Agent Smith informed [Appellant] that he was due for a drug test. Agent Smith administered a drug test to [Appellant], who immediately tested positive for Methamphetamine. [Appellant]'s positive drug test was a parole violation so Agent Smith placed [Appellant] in handcuffs for him to be taken into custody. Agent Smith then

* Retired Senior Judge Assigned to the Superior Court.

called his parole supervisor to obtain permission to search [Appellant]'s home for contraband because of the parole violation. After he received approval from his supervisor, Agent Smith asked [Appellant] whether he had anything in the home that Agent Smith should know about. [Appellant] replied, "Yes, I have a gun." Agent Smith then asked Defendant where the gun was, and [Appellant] replied, "It is in the closet." Finally, Agent Smith asked [Appellant] where the closet was, and [Appellant] replied, "The closet in the hallway."

Parole agents recovered a .38 Smith and Wesson revolver, two electronic scales, 18.9 grams of marijuana, and packaging material from inside a black trash bag that was inside a closet of [Appellant]'s home. Following the search of the home, parole agents searched [Appellant]'s vehicle. Parole agents recovered, *inter alia*, 11 rounds of .38 caliber ammunition from his vehicle.

        . . . .

Parole Agent Eric Brown assisted Agent Smith in searching [Appellant]'s home. As he was searching the home, Agent Brown observed car keys on a dresser. Agent Brown asked Defendant, "Where the vehicle was?" Defendant responded, "Yeah, it's right out front." At the time Defendant made this statement to Agent Brown, Defendant was in handcuffs and in custody for the parole violation. Agent Brown testified that - if Defendant did not tell him where the car was - he would have found it either by using the car keys, or by looking up his license plate and then finding the vehicle with that license plate. Defendant's vehicle was located outside of his home.

Agent Brown has conducted many searches of parolees' property as a parole agent. If a parolee tested positive for narcotics, Agent Brown would search the parolee's property for other possible parole violations including for possession of narcotics and firearms. In his experience as a parole agent, he has recovered contraband from parolees' home as well as from their vehicles during searches following parole violations for testing positive for narcotics.

Supplemental Trial Court Opinion, 7/21/17, at 1-3 (footnote omitted).

Appellant filed a motion to suppress all physical evidence in addition to all statements. The Honorable Daniel J. Anders granted partial relief, finding that Appellant's statement regarding his ownership of a firearm was inadmissible. The court denied the motion in all other respects. Appellant thereafter proceeded to a non-jury trial before the Honorable Michael Erdos, and was found guilty and sentenced as previously indicated.

Appellant filed a court-ordered concise statement of matters complained of on appeal, and Judge Erdos responded with an opinion. Appellant subsequently filed a petition with this Court to vacate briefing and remand for a supplemental Rule 1925(b) statement, which we granted on March 27, 2017. The supplemental statement raised an additional claim, and Judge Anders filed a supplemental opinion in response. The matter is now ready for review of Appellant's claims:

1. Did not the suppression court and the trial court err in failing to suppress the physical evidence recovered from Appellant's residence as fruit of the poisonous tree, having been recovered as the result of a statement which was itself suppressed by the lower court, made by Appellant while in custodial detention without having been given **Miranda** [**v. Arizona**, 384 U.S. 436 (1966)] warnings?

2. Did not the court err in denying suppression of the bullets recovered from Appellant's car, where the car search exceeded the scope of what was permissible under the federal and state constitutions and/or statutory and regulatory authority, where the police and parole agents lacked reasonable suspicion to conduct a search of Appellant's car, and where the search of the car was the fruit of an illegally obtained statement?

3. Did not the court err in denying suppression of Appellant's statement to parole agents about the location of his car because the statement was made while Appellant was in custody and subject to interrogation but had been given no *Miranda* warnings?

Appellant's brief at 3 (reordered for ease of discussion).

All three issues pertain to the trial court's denial of Appellant's suppression motion, to which we apply the following standard of review:

> The standard and scope of review for a challenge to the denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the rulings of a suppression court, [the appellate court] considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, [the court is] bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Dougalewicz*, 113 A.3d 817, 823 (Pa.Super. 2015) (citation omitted, alterations in original).

Appellant's first two arguments both concern the suppression of physical evidence, and we therefore address them together. Preliminarily, we note that Appellant's arguments flow from the partial grant of his motion to suppress based on *Miranda v. Arizona*, 384 U.S. 436 (1966). As indicated in the factual recitation, the trial court determined that Agent Smith violated *Miranda* when he asked Appellant the question that elicited Appellant's answer that a gun was in his home.

- 4 -

The trial court, however, did not find a *Miranda* violation with respect to Agent Brown's question to Appellant regarding his vehicle. While searching a bedroom, Agent Brown observed car keys and asked Appellant where the vehicle was located. Appellant told them, resulting in a search of the vehicle. According to Appellant, that question, no less than the question asked by Agent Smith, constituted interrogation and therefore the failure to warn requires suppression of that statement. In turn, according to Appellant, all the searches were tainted by the *Miranda* violations, requiring suppression of the evidence as fruit of the poisonous tree.

We briefly examine the trial court's rationale, which Appellant addresses at length in his brief. The trial court determined that Appellant was in custody, but that the question regarding the car did not constitute interrogation as the officer was merely gathering information. *See Rhode Island v. Innis*, 446 U.S. 291, 300 (1980) ("It is clear therefore that the special procedural safeguards outlined in *Miranda* are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation"); *Commonwealth v. Umstead*, 916 A.2d 1146, 1152 (Pa.Super. 2007) (*Miranda* warnings are not necessary "in every instance where an individual who is in police custody is questioned by a law enforcement official 'regarding a crime.'"). Alternatively, the trial court concluded that the inevitable discovery doctrine applied, as the agents testified that they simply would have consulted law enforcement databases

to determine which vehicle was registered to Appellant if Appellant had not answered.

Our research has not uncovered a case from this jurisdiction directly on point regarding a question designed to reveal the location of property which may or may not contain evidence. On the one hand, the question was not likely to elicit an admission as the question simply asked where the vehicle was located. The agents had no particular knowledge at that time that the vehicle contained anything criminal, or that the vehicle itself was illegal in some fashion (such as by being stolen). On the other hand, as Appellant persuasively states, the officers (1) intended to link Appellant to the vehicle, and (2) intended to search the vehicle for incriminating evidence, which is what happened. Thus, the question was designed to elicit a response that, while not directly incriminating, was linked to potentially incriminating information. **See In re D.H.**, 863 A.2d 562, 566 (Pa.Super. 2004) ("'Interrogation'" is defined as police questioning or conduct calculated, expected, or likely to evoke an admission.").

We find that resolving this question is unnecessary, as Appellant does not draw any distinction between suppressing statements given following a purported **Miranda** violation, and physical evidence uncovered as a result of

those responses.[1] As the Commonwealth notes, the fruit of the poisonous tree doctrine does not extend to physical evidence resulting from a violation of *Miranda*. Stated another way, a violation of *Miranda* requires suppression of the statements, but does not require the suppression of any physical evidence discovered as a result of those statements.

In *United States v. Patane*, 542 U.S. 630 (2004) (plurality), three Justices concluded that a voluntary statement, although unwarned, does not

---

[1] Instead, Appellant discusses his belief that neither the inevitable discovery nor independent source doctrines would apply, and claims that any search of the vehicle was tainted by the misconduct flowing from a violation of *Miranda*:

> The trial court concludes that "although the statements [Appellant] made to Agent Smith were suppressed, the parole agents would have discovered those items pursuant to the inevitable discovery doctrine." That doctrine provides authorities with an anodyne mask to cover the effects of the poison.
>
> . . . .
>
> Again, as noted, because the questioning of Appellant was custodial interrogation, explicitly directed at obtaining information which would incriminate him, the police were required to inform him of his rights under *Miranda* and failed to do so. Therefore, the Commonwealth was required to show that the gun and paraphernalia would, necessarily and unavoidably, have been found, that "the evidence would have been discovered absent the police misconduct, not simply that they somehow could have lawfully discovered it." This the Commonwealth failed to do.

Appellant's brief at 16-17 (citations omitted). This argument appears to posit that the Commonwealth is required to establish an independent basis for searching the car as a necessary condition to uphold the denial of suppression, as opposed to a sufficient ground to do so.

justify excluding physical evidence recovered as a result of that statement under the fruit of the poisonous tree doctrine. Therein, a police officer arrested Patane, and had information that Patane owned an illegal firearm. In contravention of *Miranda*, the officer repeatedly asked where the gun was located. Patane eventually stated that the gun was in his bedroom, leading to its recovery. Patane sought to suppress the physical evidence as an illegal derivative fruit of the tainted statement. The plurality concluded that result was not warranted.

> [T]he *Miranda* rule is a prophylactic employed to protect against violations of the Self–Incrimination Clause. The Self–Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the *Miranda* rule to this context. And just as the Self–Incrimination Clause primarily focuses on the criminal trial, so too does the *Miranda* rule. The *Miranda* rule is not a code of police conduct, and police do not violate the Constitution (or even the *Miranda* rule, for that matter) by mere failures to warn. For this reason, the exclusionary rule . . . does not apply.

*Id*. at 636–37. Justice Kennedy, joined by Justice O'Connor, concurred, but declined to go so far as the plurality, opining:

> In light of the important probative value of reliable physical evidence, it is doubtful that exclusion can be justified by a deterrence rationale sensitive to both law enforcement interests and a suspect's rights during an in-custody interrogation. Unlike the plurality, however, I find it unnecessary to decide whether the detective's failure to give Patane the full *Miranda* warnings should be characterized as a violation of the *Miranda* rule itself, or whether there is "[any]thing to deter" so long as the unwarned statements are not later introduced at trial.

*Id*. at 645 (Kennedy, J., concurring) (citation omitted). It has been recognized that "the *Patane* plurality and concurrence agreed, at least, that *Miranda* does not require the exclusion of physical evidence that is discovered on the basis of a voluntary, although unwarned, statement. As several of our sister circuits have recognized, this narrow agreement is the holding of *Patane*." *United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007) (citations omitted); *Commonwealth v. Abbas*, 862 A.2d 606, 610 n.3 (Pa.Super. 2004) ("Though a plurality decision, the majority of the Justices agreed that introduction of nontestimonial derivative evidence does not implicate the Self–Incrimination Clause of the Fifth Amendment."). In *Abbas*, we adopted the *Patane* approach.

> Currently, there is no precedent in this Commonwealth indicating that the Pennsylvania Constitution extends greater protection than its federal counterpart with respect to the Fifth Amendment right against self-incrimination in the context of physical evidence obtained as a result of or during the course of an unwarned statement. We find *Patane* instructive here. Accordingly, until our Supreme Court has the occasion to conduct an independent analysis, we are persuaded by the reasoning in *Patane.*

*Id*. at 609–10 (footnotes omitted).

We therefore agree with the Commonwealth that the physical evidence was not subject to suppression, even if Appellant is correct that the

statement was subject to suppression.[2]  Therefore, the court did not err in admitting the evidence.

Having concluded that the trial court did not err in declining to suppress any of the physical evidence recovered, we now address whether the trial court failed to suppress the statement itself.  We will assume, for purposes of disposing of this claim, that the question was calculated to elicit an incriminating response, and that the statement should have been suppressed.

The Commonwealth submits that any such error was harmless beyond a reasonable doubt.  *Commonwealth v. Baez*, 720 A.2d 711, 720 (Pa. 1998) ("A suppression court's error regarding failure to suppress statements by the accused will not require reversal if the Commonwealth can establish

_____

[2] Appellant has not challenged the search on grounds other than his *Miranda* theory, except to state, without elaboration, that the vehicular search "exceeded the scope of what was permissible under the federal and state constitutions and/or statutory and regulatory authority[.]"  Appellant's brief at 14.  We deem any argument attacking the search on those grounds waived due to the failure to develop the argument in a meaningful fashion.

With respect to the vehicular search, we note that the parole agent explained that he searched the vehicle due to policy implementations of the statutory authority given to parole agents regarding parolee searches.  *See* 61 Pa.C.S. § 6153(d)(2) ("A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision").  *See also Commonwealth v. Sperber*, 177 A.3d 212 (Pa.Super. 2017) (holding that reasonable suspicion existed to search parolee's person, phone, and vehicle).

beyond a reasonable doubt that the error was harmless."). Harmless error exists where, *inter alia*, "the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence[.]" ***Commonwealth v. Chmiel***, 889 A.2d 501, 521 (Pa. 2005) (citation omitted).

We agree that the statement was cumulative of other evidence establishing that his ownership of the vehicle. The Commonwealth introduced evidence that the agents conducted a check of the vehicle's license plate, and learned that the vehicle was registered to Appellant. Additionally, no other adult lived in the residence with Appellant; thus, the mere fact Appellant was in possession of the vehicle's keys linked him to the vehicle. We therefore conclude that any error in introducing the statement was harmless beyond a reasonable doubt.

Judgment of sentence affirmed.

Judge Nichols joins the memorandum.

Judge Ransom concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/18/18

- 11 -